## HOME MORTG. CO. et al. v. RAMSEY et al.
### No. 3161.

Circuit Court of Appeals, Fourth Circuit.
April 24, 1931.

John W. Davis, of New York City, and James H. Pou, of Raleigh, N. C. (James H. Pou, Jr., of Raleigh, N. C., R. P. Reade, F. L. Fuller, Jr., and Jones Fuller, all of Durham, N. C., W. A. Devin, Jr., and Thos. P. Pruitt, both of Hickory, N. C., and Allen Wardwell, Porter R. Chandler, Kenneth F. Clark, Rushmore, Bisbee & Stern, Joseph V.

Kline, and Bertram F. Shipman, all of New York City, on the brief), for appellants.

Ernest S. Merrill, of Norfolk, Va., and L. I. Moore, of Newbern, N. C. (A. L. Jordan, of Norfolk, Va., R. T. Allen, of Kinston, N. C., and R. Clarence Dozier, of South Mills, N. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

ERNEST F. COCHRAN, District Judge.

The appellants were the defendants in the District Court, and the appellee the plaintiff, and will hereafter be styled the plaintiff and defendants, respectively. The plaintiff, claiming to be the owner of $3,500 of bonds of the defendant the Home Mortgage Company, brought suit against that company, and the defendant First National Bank of Durham as trustee, and prayed for a receivership. Temporary receivers were appointed without notice, and later, by successive orders were tered, making the appointment of the receivers permanent; and the consolidated record brings up for review these successive orders and decree. The record is a voluminous one, and many questions have been presented, both in matters of procedure and as to the rights of the parties in the premises. The case is a very important one, and the situation demands a prompt decision. In these circumstances, we shall not attempt to discuss the evidence or to state all of the facts in detail. It is sufficient to say that we have carefully considered all questions presented, and inasmuch as we have reached the conclusion, upon a consideration of the merits of the cause, that the receivership should be vacated, we shall simply state as briefly as practicable those facts upon which our conclusion is based, without attempting any elaboration of our views or such extended discussion of the questions presented as we might deem proper if the case were such as not to demand a speedy decision.

The defendant Home Mortgage Company is a corporation having assets considerably in excess of $10,000,000. Originally it was one of a group of companies formed by its former president, and until January, 1930, he and his associates were in active charge of its affairs. There was some evidence of some mismanagement on the part of the officers of the Home Mortgage Company, prior to January, 1930; but the evidence discloses no fraud or mismanagement of such a gross nature as would imply misconduct or actual fraud. In January, 1930, however, the entire management of the company was reorganized and the president resigned. Numerous other changes in the personnel of the officers took place at the same time, and the policies of the company underwent a considerable change, and that course of conduct on the part of the previous officers which appears to have been (to some extent, at least) evidence of mismanagement, was abandoned, and efforts made by the new management to correct those matters. The Home Mortgage Company was engaged in the usual business of a mortgage brokerage concern, making loans upon real estate. At the time of the receivership the outstanding individual loans amounted to something over $10,000,000. The plan of the company was to issue bonds and certain indentures securing the same, supported by deposit, with the defendant First National Bank of Durham as trustee, the notes and mortgages of the individual borrowers to serve as collateral against the bonds. At the time of the receivership there was outstanding a total of more than $10,000,000 such bonds. They were issued under five separate indentures made by the Home Mortgage Company to the First National Bank of Durham, N. C., as trustee under each indenture. Under the first of these indentures (spoken of as the Metropolitan indenture), bonds were issued aggregating around $6,000,000 and were outstanding at the time of the receivership. Under this indenture, the bonds were issued in fourteen series, lettered consecutively. Each series is a unit, separate and distinct from every other series, and is secured by the deposit of separate collateral; so that the bonds of each series are secured by an independent lien upon independent collateral. The entire issue or series (under this indenture), besides being secured by real estate mortgages, is guaranteed as to both principal and interest by the Metropolitan Casualty Insurance Company of New York. The plaintiff claims to be the owner of $3,500, face amount of bonds belonging to Series I, issued under this indenture.

In addition to the Metropolitan indenture under which plaintiff claims to hold her bonds, there are four other indentures under which bonds were issued, commonly referred to as the Straus indentures. Under each of them were issued outstanding bonds in the face amount of $1,000,000, or $4,000,000 in all. The bonds under these indentures were likewise secured by first mortgages on real estate deposited as collateral with the First National Bank of Durham as trustee; but

were not further secured by any outside guarantor, as was the case with plaintiff's bonds. At the time of the receivership, none of the bonds issued under any of the Straus indentures were or at any time had been in default as to either principal or interest. As to the bonds under the Metropolitan indenture, none of them, either of the plaintiff's series or any other, has at any time been in default with respect to either principal or interest; principal and interest on all of them having been punctually paid both before the receivership and since.

The bonds claimed by plaintiff and all other bonds issued under the Metropolitan indenture incorporate by reference the provisions of the indenture into the bond, the language of the bond in that respect being as follows: "This Bond is one of a duly authorized issue of Bonds of the Company known as its Guaranteed First Mortgage Collateral Gold Bonds, Series ———— (herein called the Bonds), limited as to said series to the aggregate principal amount of One Million Dollars ($1,000,000.), at any one time outstanding, all of which Bonds of said series are issued and to be issued under and equally secured by and subject to the terms and conditions of a trust indenture dated the ———— day of May, 1927, made by the Company to the First National Bank, as Trustee (herein called the Trust Indenture), reference to which is hereby made for a description of the nature of the security and of the rights, obligations, and duties of the Company, of the Trustee and of the holders of the Bonds, and the terms and conditions under which the Bonds are secured."

The Metropolitan indenture under which the bonds claimed to be owned by plaintiff were issued contains the following provision:

"Section 12. Anything in this Article or elsewhere in this Trust Indenture to the contrary notwithstanding, *no holder of any Bond or coupon issued hereunder and hereby secured shall have any right to institute any suit, action or proceeding at law or in equity or take any other steps or proceedings for any remedy hereunder,* unless such holder previously shall have given to the Trustee written notice of such default and the continuation thereof, as hereinbefore provided; nor unless the holders of not less than twenty-five per cent. (25%) in amount of all the bonds of said series, then outstanding, shall have made written request upon the Trustee and shall have offered to it a reasonable opportunity either to proceed to exercise the powers hereinbefore granted or to institute such action, suit or proceedings in its own name, and shall have offered to the Trustee adequate securities and indemnity against the costs, expenses and liabilities to be incurred therein or thereby; provided, however, that the right herein provided for shall not be exercised by bondholders without the consent of the Surety Company so long as no event of default as prescribed in subdivisions (1) and/or (2) of Section 2 of this Article V shall exist, and in such case, in respect of a default as prescribed in subdivision (1) only after the elapse of ninety (90) days from the commencement of such default, and in respect of a default as prescribed in said subdivision (2) only after the elapse of eighteen (18) months from the commencement of such default. Said notification, request and offer of indemnity are in each and every such case to be conditions precedent to the exercise by the bondholders, except through the Trustee, of the powers and trusts of this Trust Indenture; *it being understood and intended that no one or more holders of Bonds and coupons shall have any right in any manner whatsoever by his or their action to affect, disturb or prejudice the lien of this Trust Indenture, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided,* and for the equal benefit of all the Bonds of any Series outstanding hereunder.

"The foregoing provisions of this Section 12, however, are intended only for the protection of the Trustee, and shall not be construed to affect any discretion or power by any provisions of this Trust Indenture given to the Trustee to determine whether or not it shall take action in respect of any default without such notice or request from bondholders or the Surety Company, or to affect any other discretion or power given to the Trustee.

"Nothing in this Section 12 or elsewhere in this Trust Indenture or in the Bonds or in the coupons, if any, appertaining thereto shall affect or impair the obligation of the Company, which is unconditional and absolute, to pay the principal and interest of the Bonds to the respective holders of the Bonds and to the respective holders of any coupons appertaining thereto, at the respective due dates in such Bonds and coupons stated, nor affect or impair the contract right of action, which is also absolute and unconditional, of such holders to enforce such payment by action at law against the Company." (Italics ours.)

The trustee has never consented to this action by the plaintiff, but on the contrary has opposed it. Neither the special master nor the District Court made any findings of fraud, misconduct, mismanagement, incompetency, or any other grounds why it should be displaced or disqualified from representing the bondholders. Nor was there any finding, nor is there any proof of any collusion on the part of the said trustee with the Home Mortgage Company or any of the bondholders or any hostile attitude on the part of the trustee, as against the plaintiff's rights.

Both before and after the present officers took charge of the affairs of the Home Mortgage Company, a large number of underlying mortgages supporting the bonds and indentures became in default, and many of the properties were foreclosed by the Home Mortgage Company in the name of the trustee; that course being permitted by the terms of the indentures. It is conceded that prior to the present management, the method of bidding in the property at these foreclosures by what was termed a service corporation, namely, the New Hope Realty Company, was improper, as not sufficiently protecting the rights of the Home Mortgage Company and the bondholders; but this plan was changed by the new management, and we have been unable to find any evidence that the plan adopted by the new management through the means of a new service corporation known as the Realty Sales Company was improper, or did not properly protect the interests of the bondholders and of the Home Mortgage Company. As has been stated above, the court below found some other evidence of mismanagement on the part of the former officers; but we have found no charge of mismanagement against the present officers sustained by the evidence.

The plaintiff testified that some time in August, 1930, she decided to invest in bonds of this company. It is claimed that she acquired and had possession of her bonds of Series I of the Metropolitan indenture issue before the bill was filed and the order appointing temporary receivers was made; and both the special master and the District Court have found in her favor upon that fact. The District Court also held that her motives in purchasing the bonds were immaterial, and not to be considered in determining whether a receiver should be appointed or not. We are not unmindful of the rule that concurrent findings of the special master and District Court should not be set aside unless the evidence is clear, cogent, and convincing; but in this case it is impossible from the documentary evidence and the circumstances surrounding the transaction of the purchase of these bonds by the plaintiff, to resist the conclusion that she had not acquired either the possession or the legal title to them at the time the bill was filed and the order appointing temporary receivers was made. The evidence is beyond any reasonable doubt that she had merely an option upon the bonds, and did not acquire either the title to them or their possession until several days after the first order was made appointing the temporary receivers. It is clear also from the evidence and the circumstances of the case that these bonds purchased by her were not purchased as an investment, but for the purpose of obtaining a receivership of the properties of these defendants.

The bill was presented to the district judge on October 17, 1930, and an order was granted, without notice, appointing temporary receivers of all the properties of the Home Mortgage Company, including the trust estates held by the First National Bank as trustee of the collateral to secure the bonds of the Home Mortgage Company. Later there were various proceedings in the cause, but it is unnecessary to recite them. Before the defendants appeared in the cause, a special master was appointed to investigate the affairs of the Home Mortgage Company, mainly (apparently), to determine its solvency or insolvency. While his appointment was made without notice, nevertheless the defendants afterwards had notice to participate, and did participate in the hearings before the special master. After the appearance of the defendants the plaintiff was permitted to file an amended bill, and the court by various orders continued the receivership; and finally, upon the coming in of the report of the special master, heard the case upon the merits, and passed a final decree making the receivership permanent; and directed the receivers as *permanent* receivers to administer all the property of the Home Mortgage Company, including the property embraced in the indentures, the same to be administered, however, in connection with the First National Bank of Durham as trustee. The final decree also declared the Home Mortgage Company in default, under the terms of the trust indenture under which the bonds of the plaintiff had been issued. Both the District Court and the special master found that the Home Mortgage Company is insolvent. It appears to us that there is doubt about the insolvency of the company, but in view of the conclusions

reached in this opinion, it is not necessary to decide that question.

The plaintiff, holding at the present time only $3,500 of these outstanding bonds, was the only bondholder to bring this suit and although it has been pending nearly six months no other bondholder or person has at any time appeared in her support. The receivership is opposed by the Home Mortgage Company and its stockholders, by the trustee representing the bondholders under all of the collateral trust indentures, by the Metropolitan Casualty Insurance Company, which guaranteed over $6,000,000 of these bonds (including the plaintiff's), by individual bondholders aggregating a large amount, and apparently by all unsecured creditors having admitted claims. It should be stated, however, that none of these parties have sought to intervene in the cause, but at the hearing in this court, attorneys representing a committee of bondholders desired to appear as amici curiæ in opposition to the receivership, but were not permitted to do so, 'and their brief was admitted only after it was signed by the attorneys for the defendants as their own brief.

Neither the plaintiff's original bill nor her amended bill sought any independent equitable relief. The bill was simply for receivership of the property of the Home Mortgage Company; to take over all the property of that company, including that held by the trustee under the indentures referred to; and to administer the same under the order of the court.

It is perhaps unnecessary to advert to certain well-settled principles governing the appointment of receivers. It is a drastic remedy, and calls for the exercise of the greatest care and judgment; and this is especially true where it is sought to take not only from the parties themselves the management of their own property, but property in the hands of a trustee. The appointment of receivers is to be resorted to only in cases of necessity; and when no other remedy is available. In the present case, we are firmly of the opinion from a consideration of the merits of the case and all the facts and circumstances disclosed by this record, that this receivership should not have been granted, and that the appointment of the receivers should be vacated; that they should be discharged from the duties of their office; and the property turned over forthwith to the defendants and the plaintiff's bill dismissed. We think this conclusion inevitable upon several grounds.

In the first place, in so far as the receivers are directed to take charge of the property of the Home Mortgage Company, which is not embraced in the trust indentures, the plaintiff has no lien or claim on such property, and is a simple contract creditor. Assuming (without deciding) that the Home Mortgage Company is insolvent, nevertheless in the federal courts, in such case, insolvency is not sufficient; but in addition it must appear that judgment has been obtained and execution returned unsatisfied, or that there is property which may be reached in equity for the satisfaction of the plaintiff's claims which may not be reached by law. This is well-settled law in the federal courts. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 379, 14 S. Ct. 127, 37 L. Ed. 1113. Here no judgment has been obtained, and so far as the property of the Home Mortgage Company which is not embraced in the trust indenture is concerned, no receivership should be granted.

It is said, however, that this is a trust estate, and that equity should intervene and take charge of and administer that estate for the benefit of the bondholders. We quote from the plaintiff's brief as follows: "However, this is not a suit having for its purpose the dissolution of the Home Mortgage Company, but rather to conserve and preserve, as well as liquidate a trust through officers appointed by the Court. Nothing more is really asked in this suit for the reason that it appears that the Home Mortgage Company is nothing more than a skeleton or shell. It is entirely devoid of any appreciable amount of assets, and the relief sought by this suit was, and is, to have the Court administer the trust estate belonging to the bondholders who are, by virtue of this suit, asking for this relief."

And again in her brief she says: "This suit has not for its purpose the disturbing of any lien given by the trust indenture or prejudicing any right under it. It is not a suit having for its purpose the granting of any remedy under the terms of the Indentures but is one solely for the purpose of conserving and preserving the trust estate and the enforcement of the right, irrespective of any Trust Indenture, of any bondholder interested in any trust estate to have that *estate administered honestly.*"

When considered *in that aspect,* the bill must certainly fail. In effect, it is nothing more than a bill to take charge of a trust estate because of misconduct or incompetency of the trustee, or such mismanagement as would amount to waste. Here the proofs are

lacking to show any misconduct or mismanagement on the part of the trustee, and both the special master and the district court have found there was none. The District Court has not attempted to remove the trustee, but, on the contrary, has continued the trustee in its duties as trustee in connection with the receivers. Consequently, this is not a case where the trust is being abused, and the court of equity is removing the trustee and directing the administration of the trust. If it were, a receivership of the trust estate pendente lite would be proper and a receivership of the other property of the corporation might be proper as incidental relief, but certainly it is not proper where the trust is to be administered by the trustee, and the only effect of the receivership would be to create charges against the funds in the hands of the trustee.

Moreover, the proposition is well settled that a federal court has no jurisdiction to entertain a suit for the appointment of a receiver where the receivership is sought as an end in itself, and not as ancillary to other relief. A receivership is essentially a temporary remedy to protect and conserve the property involved during the pendency of the principal action. Pusey & Jones v. Hanssen, 261 U. S. 491, 497, 43 S. Ct. 454, 67 L. Ed. 763; Brictson Mfg. Co. v. Close (C. C. A. 8th) 280 F. 297; Willson v. Waltham Watch Co. (D. C.) 293 F. 811; Zuber v. Micmac Gold Mining Co. (C. C.) 180 F. 625; 23 R. C. L 11; High on Receivers, § 6.

In Pusey & Jones Co. v. Hanssen, supra, page 497 of 261 U. S., 43 S. Ct. 454, 456, the Supreme Court said: "A receivership is not final relief. The appointment determines no substantive right, nor is it a step in the determination of such a right. It is a means of preserving property which may ultimately be applied toward the satisfaction of substantive rights."

Here, again, the plaintiff suggests that the relief sought is the administration of the trust estate. We think that argument has been sufficiently answered in what has been said above. If this were a case to remove the trustee, and there was evidence to sustain the allegations of misconduct on the part of the trustee, the court could entertain the suit for such removal, and as incidental to that equitable relief, grant a receivership for the purpose of preserving the property pending the litigation. But no such case and no such facts are presented here. The effort is a bald one to displace the trustee without cause, and have the trust estate administered by receivers appointed by the court. The continuation of the trustee in the administration in connection with the receivers does not alter the case. In its practical effect, the decree of the District Court is simply the appointment of additional trustees; and we know of no law which would permit such appointment under the facts of this case over an objection of the trustee and practically all other parties in interest except the plaintiff.

Moreover, we think that the plaintiff is precluded from maintaining this suit by the terms of her bonds and the indenture securing them which provide in substance that action can be taken for the protection of the interest of the bondholders only where a certain number of the bondholders join. These provisions have already been quoted. The plaintiff argues that these provisions are void because it is an attempt to oust the jurisdiction of the courts. We do not so regard them. Under the terms of the bonds and indenture, the trustee is the representative of the plaintiff, and entitled to bring suit. The provisions are merely reasonable conditions precedent to the right of the plaintiff to bring the suit herself. They are intended for the security of all the bondholders, and no doubt rendered the bonds more salable. They were devised for just such a case as is presented here, where one bondholder, or a small minority, is determined upon action which a large majority believe hostile to their interests. The limitations imposed by the contract have not been met in this case. The plaintiff has not only not complied with the provision, but has made no demand whatever upon the trustee to take action, nor is there any showing that if such demand had been made, it would be futile. If it were shown that the trustee had colluded with the majority of the bondholders, or was engaged with the Home Mortgage Company in perpetrating a fraud upon the plaintiff, and that the other bondholders would not join with her in protecting their rights, a different situation would be presented; but there is no such showing. The plaintiff as against the corporation is seeking to enforce rights which the trustee is the proper person to enforce. She has made no demand upon the trustee to safeguard these rights, and has not secured the co-operation of the bondholders required by the provisions of the indenture.

Similar provisions have been sustained by other courts. Allan v. Moline Plow Co. (C. C. A. 8th) 14 F.(2d) 912; McGeorge v. Big Stone Gap Improvement Co. (C. C.) 57 F. 262; Crosthwaite v. Moline Plow Co. (D. C.)

298 F. 466; Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801; Cf. Southern Nat. Bank v. Germania Mfg. Co., 176 N. C. 318, 97 S. E. 1; Muren v. Southern Coal & Mining Co., 177 Mo. App. 600, 160 S. W. 835.

The case of Reinhardt v. Inter-state Telephone Co., 71 N. J. Eq. 70, 63 A. 1097, relied upon by the plaintiff, is not in point. In that case, the suit was maintained by the plaintiff as a creditor under a statute of New Jersey, and the terms of the contract prohibited the suit under the mortgage, but did not include the case of an application for a receiver under the statute.

The plaintiff insists, however, that the terms of the indenture prohibit suit to enforce any right "hereunder," and that this suit is not of such a nature. We do not think this contention can be sustained. The rights claimed by the plaintiff are under her bonds and the indenture. If she does not stand upon the indenture, she has no standing at all. The suit, therefore, clearly is one under the terms of the indenture, and embraced in the restrictive clause.

But there is another ground which we think demands that a court of equity should not entertain this suit. At the outset, we desire to say that we are not unmindful of those cases which hold that where the suit is based on a plaintiff's property rights, either legal or equitable, his motives in the acquisition or prosecution of those rights cannot be considered as a basis for refusing to recognize them. There are exceptions to the rule. Cf. Forrest v. Ry. Co., 4 De Gex F. & J. 126, and Seaton v. Grant, 2 Ch. App. 459. But in cases like the one at bar, where an application is made for the appointment of a receiver, we think that in balancing the equities of the parties, under the peculiar facts of this particular case, a court of equity should take into consideration the circumstances under which the plaintiff acquired her bonds and her purpose in doing so. If we should fail to express our views upon the facts in that respect as disclosed by this record, we feel that we should not do our duty, and we do not intend to give even an apparent sanction to the methods of obtaining a receivership that have been employed in this case. While there is some conflict in the evidence, and we have reluctantly come to the conclusion that we have reached in this respect, nevertheless, as already stated, there is no escaping the conclusion that the plaintiff was not the owner of these bonds at the time the suit was instituted, and did not have possession of, or the legal title to

them; and that she acquired them, not as a bona fide investment, but for the sole purpose of bringing this suit and creating a receivership. The plaintiff, before she brought her suit, and before she had bought or paid for her bonds, and when she had *only an option to purchase them,* was advised that the Home Mortgage Company was in difficulties, and that it would be necessary for her to employ counsel. She did employ counsel to bring this suit before she had done anything more than obtain a mere option on the bonds. There had never been any default in the payments of interest or principal, as to her bonds or any of the bonds issued by the Home Mortgage Company. Her bonds were guaranteed by a surety company. She stands alone in her suit, unsupported by any other bondholder or party in interest. She claims to bring the suit, not only for herself, but as a representative of all other bondholders. She never made any demand upon the trustee to take any action whatsoever; nor has she shown that such demand would have been unavailing. She has not shown that the trustee has taken any position hostile or adverse to her interest or that of any bondholder. She has not shown that there is any conspiracy or collusion or connivance between the trustee and the Home Mortgage Company or any other person to deprive her of any of her rights. The officers of the Home Mortgage Company, under whom there had been mismanagement before she acquired her bonds, had been displaced and a new management and new officers installed, who were doing (as far as the record discloses) all they could to tide over the crisis in the affairs of this corporation. We know that in times of stress, many corporations find themselves embarrassed and in great straits to tide over those periods. We know also that many of them do pass successfully through times of financial distress. If, when those times arrive, and a corporation is struggling to tide them over, a person with knowledge of the situation can go out and buy a small percentage of outstanding bonds for the simple and sole purpose of creating a receivership, against what the other bondholders and parties in interest believe to be a proper course for them to pursue, many corporations would be in great danger. We think, when all the facts are considered and all the equities balanced, a court of equity should not appoint a receiver in such a case. Cases may arise where the interests of other persons would be so involved as to necessitate the appointment of a receiver in any event; but such a case is not presented here. If this corporation had been let alone, it

might (as has been suggested by the district judge) be found necessary at a later date for a receiver to be appointed. But, on the other hand, it might retrieve its fortunes. To deprive the corporation and the trustee of the opportunity to go forward and conserve the assets of the corporation for the benefit of the bondholders in the circumstances as disclosed by this case, would, it seems to us, be inequitable.

In the brief submitted by defendants, it was argued that this court should direct that the suit should be dismissed at the cost of the plaintiff, and no fees and allowances should be paid out of the trust estates. As there has been no ruling of the district judge in that respect, we do not think that we should at this stage enter such directions. This court has in this opinion held plainly that this receivership ought not to be granted, and we cannot assume that the District Court, with the views of this court before it, will impose any part of the costs and expenses of this receivership and these proceedings upon the property of the corporation or upon the trust estate, at the expense of the innocent bondholders and other creditors. The several decrees of the District Court are therefore reversed, and the case remanded with directions to vacate the receivership and order the property of the defendants returned to them forthwith and to dismiss the suit.

Reversed.