**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1742

FEDERAL TRADE COMMISSION,

Plaintiff – Appellee,

and

MARC-PHILLIP FERZAN,

Receiver – Appellee,

v.

ANDRIS PUKKE, a/k/a Marc Romeo, a/k/a Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); PETER BAKER, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); JOHN USHER, individually and as an officer or owner of Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve) and Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve),

Defendants – Appellants,

and

ECO-FUTURES BELIZE LIMITED, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a California Corporation; ECO FUTURES DEVELOPMENT, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a company organized under the laws of Belize; BUY BELIZE, LLC, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California limited liability company; BUY INTERNATIONAL,

INC., d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California corporation; GLOBAL PROPERTY ALLIANCE, INC., a California corporation, also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International; FOUNDATION DEVELOPMENT MANAGEMENT INC., a California corporation; SITTEE RIVER WILDLIFE RESERVE, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, an entity organized under the laws of Belize; POWER HAUS MARKETING, a California corporation; EXOTIC INVESTOR, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St.Kitts and Nevis; NEWPORT LAND GROUP, LLC, a/k/a Laguna Palms, a/k/a Sanctuary Belize, a/k/a Bamboo Springs, a/k/a The Reserve, a Wyoming limited liability company; PRODIGY MANAGEMENT GROUP, LLC, a Wyoming limited liability company; SOUTHERN BELIZE REALTY, LLC, a limited liability company organized under the laws of Belize; BELIZE REAL ESTATE AFFILIATES, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; THE ESTATE OF JOHN PUKKE, a/k/a The Estate of Janis Pukke, a/k/a The Estate of John Andris Pukke; SANCTUARY BELIZE PROPERTY OWNERS' ASSOCIATION, d/b/a The Reserve Property Owners' Association, a Texas non-profit corporation; LUKE CHADWICK, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize; ECOLOGICAL FOX, LLC, a Maryland limited liability company; BRANDI GREENFIELD, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); BG MARKETING, LLC, an Oklahoma limited liability company; ROD KAZAZI, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); FOUNDATION PARTNERS, f/k/a Red Crane Advisors, Inc., a California corporation; FRANK COSTANZO, a/k/a Frank Green, a/k/a Frank Peerless Green, a/k/a Frank Connelly, a/k/a Frank Connelly-Costanzo, individually and as officer or owner of Ecological Fox, LLC, Buy International, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), and Foundation Development Management, Inc.); ANGELA CHITTENDEN; BEACH BUNNY HOLDINGS, LLC, a California limited liability company; JOHN VIPULIS; DEBORAH CONNELLY; MICHAEL SANTOS, a/k/a Sanctuary Bay, a/k/a Sanctuary Belize, a/k/a The Reserve, a/k/a Kanantik, a/k/a Laguna Palms, a/k/a

2

Bamboo Springs, a/k/a Eco Futures, a/k/a Eco Futures Development, a/k/a Eco Future Belize, a/k/a Sittee River Wildlife Reserve, a/k/a Buy Belize, a/k/a Buy International, a/k/a Buy Belize, LLC, (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), a/k/a Buy International, Inc., (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Lagunal Palms, and Bamboo Springs), Individually and as an officer or owner of Global Property Alliance, Inc; AMERIDEBT, INCORPORATED; DEBTWORKS, INCORPORATED; PAMELA PUKKE, a/k/a Pamela Shuster; INTERNATIONAL BANK, LTD, a company organized under the laws of Belize,

>    Defendants,

and

CROSS-FREDERICK ASSOCIATES, LLC; FOLEY & LARDNER LLP,

>    Respondents,

and

UNITED STATES OF AMERICA,

>    Creditor,

and

THE HAMPSHIRE GENERATIONAL FUND LLC; DAVID PORTMAN; JULIE SANTOS; CLARISSA TENGONCIANG; ALLAN PRIJOLES; STEVEN M. SCHULTZ; MARY JANE PRIJOLES; JONATHAN B. SCHULTZ; HARVEY SCHULTZ; HEARTLAND PROPERTY GROUP, INC.; DARREN CHRISTIAN; JOHN A. SARACENO; JULIANA TENGONCIANG; ALFONSO KOLB, JR.; QUAN LIN; JASMIN TENGONCIANG; CHAN MARTIN; YU LIN; ROEL PAHL,

>    Intervenors,

and

CHAPTER 11 TRUSTEE,

>    Trustee.

3

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Peter J. Messitte, Senior District Judge.  (1:18−cv−03309−PJM)

———————

Argued:  October 31, 2024                          Decided:  December 12, 2024

———————

Before WILKINSON, KING, and THACKER, Circuit Judges.

———————

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Thacker joined.

———————

**ARGUED:**  John Buchannan Williams, WILLIAMS LOPATTO PLLC, Washington, D.C., for Appellants.  Benjamin Frank Aiken, FEDERAL TRADE COMMISSION, Washington, D.C., for Appellee.  **ON BRIEF:**  Neil H. Koslowe, POTOMAC LAW GROUP PLLC, Washington, D.C., for Appellant.  Anisha S. Dasgupta, General Counsel, Matthew M. Hoffman, Benjamin J. Theisman, FEDERAL TRADE COMMISSION, Washington, D.C., for Appellee.

———————

4

WILKINSON, Circuit Judge:

This appeal is the latest chapter in long-running litigation over a real estate scam. Andris Pukke, Peter Baker, and John Usher were found liable for violations of the Federal Trade Commission Act, the Telemarketing Sales Rule, and a permanent injunction from a prior fraud case. Along with permanent injunctive relief, the district court issued an equitable monetary judgment for $120.2 million in consumer redress and a contempt judgment covering the same harm. The district court imposed an asset freeze and appointed a receiver. On appeal, we affirmed with one exception. We vacated the equitable monetary judgment to the extent it rested on FTC Act Section 13(b). But we upheld the injunctive relief and recognized that appellants still owed $120.2 million under the contempt judgment. Pukke, Baker, and Usher now contend that the district court erred by failing to remove the receiver and unfreeze their assets on remand. Finding no abuse of discretion, we affirm.

I.

A.

Appellants' extensive history of deceptive conduct is described at length in our prior decision, *FTC v. Pukke*, 53 F.4th 80 (4th Cir. 2022) (*Pukke I*), *cert. denied*, 144 S. Ct. 73 (2023). We summarize the key facts here. In 2005, Pukke, Baker, and Usher began selling lots in a real estate development in Belize. They called the project "Sanctuary Belize" and marketed it as a luxury resort for American vacationers. Pukke was effectively the head of Sanctuary Belize Enterprise (SBE), the network of individuals and corporate entities that owned and developed Sanctuary Belize. *Pukke I*, 53 F.4th at 97.

5

At Pukke's direction, SBE engaged in an aggressive sales campaign rife with misrepresentations. Prospective purchasers were misled about the debt the project carried, the reinvestment of sales revenue, the existence of luxury amenities, the timeline for development, and the state of the resale market. A crowning falsehood was that Pukke, who had already been convicted of two felonies involving consumer deception, had no meaningful involvement in the project. SBE sold over 1,000 lots—some more than once— by the time the Federal Trade Commission intervened. *Pukke I*, 53 F.4th at 97–99.

In 2018, the FTC filed a complaint against Pukke, Baker, Usher, and the other SBE participants. The FTC invoked FTC Act Section 13(b), 15 U.S.C. § 53(b), which authorizes the FTC to seek injunctions to prevent violations of laws it enforces. The complaint alleged deceptive practices in violation of FTC Act Section 5(a), 15 U.S.C. § 45(a), and the Telemarketing Sales Rule (TSR), 16 C.F.R. § 310.3. The district court entered a temporary restraining order freezing defendants' assets and appointing a temporary receiver. The asset freeze and receivership were continued through preliminary injunctions. *Pukke I*, 53 F.4th at 98; *In Re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 385–87 (D. Md. 2020).

After a three-week bench trial, the district court found the defendants liable for FTC Act Section 5(a) and TSR violations. Pukke and the corporate defendants were permanently enjoined from any future telemarketing and real estate activities, while Baker and Usher were permanently enjoined from any future telemarketing activities and involvement in Sanctuary Belize. *Sanctuary Belize*, 482 F. Supp. 3d at 468–72. The district court also entered an equitable monetary judgment of $120.2 million. That figure represented the total amount of consumer harm, calculated as the sum of consumer payments for Sanctuary

6

Belize lots less certain expenditures. *Pukke I*, 53 F.4th at 98–99. The orders imposing the permanent injunctions and equitable monetary relief required the defendants to transfer all assets they owned or controlled, except for a nominal amount held by the individual defendants, to the receiver. The orders amended the asset freeze to permit these transfers and provided that the freeze would dissolve upon satisfaction of the monetary judgment. J.A. 279–88, 359–66.

The district court also held Pukke, Baker, and Usher in contempt for violating a stipulated final judgment in a prior case, *FTC v. AmeriDebt, Inc.*, 373 F. Supp. 2d 558 (D. Md. 2005). That judgment resolved Pukke's liability for running a credit counseling scam and permanently enjoined Pukke and his affiliates from making false representations in telemarketing. *AmeriDebt* was consolidated with the Sanctuary Belize litigation prior to trial. Because the same contumacious conduct involved in the sale of the Sanctuary Belize lots violated the *AmeriDebt* injunction, the district court ordered Pukke, Baker, and Usher to pay a contempt sanction to redress the same $120.2 million in consumer harm. *Pukke I*, 53 F.4th at 99–101.

B.

Pukke, Baker, Usher, and some of the corporate defendants appealed. We affirmed in nearly all respects. Because the Supreme Court held in *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021), that the FTC cannot seek equitable monetary relief under FTC Act Section 13(b), we vacated the monetary judgment to the extent it relied on that section. But we made clear that "*AMG* does not undercut the injunctive relief entered under Section

7

13(b), and the $120.2 million order can be upheld under the contempt judgment, so *AMG* does not in fact change the bottom line." *Pukke I*, 53 F.4th at 105–06.

C.

On remand, the parties disputed the effects of our ruling. The FTC asked the district court to confirm the receivership and asset freeze portions of the prior orders. J.A. 419. Pukke, Baker, Usher and some of the corporate defendants motioned for the release of their assets. They argued that without the equitable monetary judgment there was no basis for the receiver's continued custody and control. J.A. 438.

The district court determined that the defendants were not entitled to the return of any assets. In a memorandum order, the district court explained that the Section 13(b) injunctive relief upheld in *Pukke I* "plainly includes freezing Defendants['] assets and requiring that they be turned over to the Receiver." J.A. 482. The district court entered a separate order reaffirming the receivership and permanent injunctions. That order further stated that the contempt order "requires that the Defendants' assets be frozen and otherwise turned over to the Receiver." J.A. 498. Finally, the district court entered an order approving the receiver's recommendations for the next phase of consumer redress. J.A. 490.

Pukke, Baker, and Usher timely appealed.[1]

---

[1] The FTC suggests that Pukke, Baker, and Usher lack standing because unlike the corporate defendants they do not "directly own" the assets under the receiver's control, nor have they specifically identified "personal assets" subject to the freeze. Response Brief at 19–20. But as the district court emphasized, Pukke, Baker, Usher, and the SBE corporations formed one "common enterprise of fraud." J.A. 486. An "ocean of evidence" showed the pervasive, personal control the individual appellants exercised over corporate assets. *Id.* In the district court's words, "They are as one." *Id.*

8

## II.

The issue presented is a narrow one. Pukke, Baker, and Usher do not contest that this court has already affirmed the injunctive relief entered under Section 13(b) and the $120.2 million contempt judgment. Instead they argue that after *Pukke I*, the district court was compelled to remove the receiver, unfreeze their assets, and permit them to pay the outstanding contempt sanction on their own. The only question is whether the district court abused its discretion in failing to take those steps.

### A.

We first address appellants' claim that the sole purpose of the receivership and asset freeze was to secure payment of the Section 13(b) equitable monetary judgment. That is incorrect. We recognized as much in *Pukke I* when we rejected the argument that *AMG* required nullifying the receivership and asset freeze along with vacating the Section 13(b) equitable monetary judgment.

We explained that the "appointment of a receiver has long been considered an ancillary power that a court can deploy to effectuate its injunctive relief." *Pukke I*, 53 F.4th at 107–08 (citing *Home Mortg. Co. v. Ramsey*, 49 F.2d 738, 743 (4th Cir. 1931)). In this case, "the appointment of the receiver was ancillary to effectuating the permanent injunctions imposed under the Sanctuary Belize judgment." *Id.* at 108. Rather than being appointed *only* to ensure payment of a potential monetary judgment, the "receiver was the district court's means of ensuring that further FTC Act and TSR violations would not occur and that Pukke would not continue to profit from these deceptions." *Id.* Because *AMG* did not limit the district court's power to enter injunctive relief, we held that *AMG* did not

9

undermine the appointment of the receiver ancillary to that relief. We rejected a challenge to the asset freeze along similar lines, noting that "an asset freeze is appropriate when parties request equitable relief, as the FTC has here." *Id.* at 109.

*Pukke I* forecloses the argument that the district court was compelled to end the receivership and asset freeze merely because we vacated the Section 13(b) equitable monetary judgment. The fact that appellants disagree with that decision is of no consequence. It was not an abuse of discretion for the district court to reaffirm the receivership and asset freeze as necessary to effectuate the injunctive relief it ordered.

B.

We likewise find no abuse of discretion in the district court's finding that the contempt judgment also supported freezing appellants' assets and transferring them to the receiver. In *Pukke I*, we noted that the appointment of a receiver is an important tool for a district court to "effectuate its judgments, compensate victims, and stop future transgressions." 53 F.4th at 108. An asset freeze may further similar purposes. *See SEC v. Hickey*, 322 F.3d 1123, 1132 (9th Cir. 2003) (approving an asset freeze to secure payment of a contempt sanction as within the court's equitable powers). All of these considerations amply support the district court's decision to maintain the receivership and asset freeze until the contempt judgment is satisfied.

The idea that Pukke, Baker, and Usher are entitled to the return of any assets—and should be trusted to pay the contempt judgment of their own volition—is a ludicrous one. We need only look to the circumstances that led to the contempt judgment to see why. Incredibly, appellants contend that the district court "made no factual findings at all" to

10

justify maintaining the receivership and asset freeze after *Pukke I*. Reply Brief at 10. But the district court made extensive findings showing why appellants cannot be trusted to use returned assets for the benefit of harmed consumers.

When it comes to consumer deception, appellants are serial offenders. Pukke's fraud convictions date back to 1996, when he was convicted of mail fraud. Undeterred, he orchestrated the massive AmeriDebt credit counseling scheme just a few years later. To settle that case, Pukke agreed to pay millions in restitution and turn nearly all of his assets over to a receiver. Instead of complying, Pukke and Baker conspired to hide Pukke's assets and were incarcerated as a result. *See Sanctuary Belize*, 483 F. Supp. 3d at 393–95, 467–68.

While Pukke and Baker were hiding assets from the receiver in the *AmeriDebt* proceedings, they began selling Sanctuary Belize lots. Pukke, Baker, and Usher made egregious misrepresentations to potential purchasers, many of whom were older and nearing retirement. *See id.* at 408. Not only did appellants' conduct violate the FTC Act and TSR—it also violated the *AmeriDebt* injunction specifically prohibiting Pukke and his affiliates from making misrepresentations in telemarketing. *Id.* at 469. Moreover, the district court found "incontrovertible evidence" that Pukke diverted $18 million in sales revenue for his own benefit. *Id.* at 408. Baker also admitted to diverting SBE funds for personal use. *Id.* at 410. And it was Usher, well-aware of the revenue diversions, who suggested that Pukke use an alias to hide his involvement in the project. *Id.* at 460.

Even setting aside appellants' long history of deceptive conduct, there were good reasons for the district court to engage a professional receiver in these circumstances. The

11

receiver is well-positioned to arrange the orderly sale of the Sanctuary Belize property and other SBE assets and distribute payments to defrauded consumers. Pursuant to the order implementing the next phase of consumer redress, the receiver has already engaged an international brokerage firm and distributed $10 million from funds received in a settlement with one of the corporate defendants. J.A. 491, 508–09, 519. We are not inclined to interfere with the process the district court has established for providing consumers with compensation, particularly where the court has made no finding that the value of the receivership assets exceeds the value of the judgments against appellants.[2]

As we once observed in the securities fraud context, "It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of [company] affairs for the benefit of those shown to have been defrauded." *SEC v. Bowler*, 427 F.2d 190, 198 (4th Cir. 1970) (quoting *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963)). That is certainly true here. We are asked by appellants to discard the benefits of professional management and to require the district court to turn over assets to individuals with a history of deceiving consumers, concealing funds, and defying court orders. It was hardly an abuse of discretion for the district court to keep the foxes away from the chicken coop.

---

[2] Appellants suggest that even if there was no error in the continuation of the receivership and asset freeze, it was an abuse of discretion for the district court to reject their request for an "accounting of all assets and credits" available to satisfy the contempt judgment. Opening Brief at 24. Whether appellants properly preserved that argument is in serious question. In any case, we detect no abuse of discretion here, either. The receiver already files financial reports with the district court, and we are disinclined to micromanage their content.

12

III.

Far from committing an abuse of discretion, the district court acted prudently in appointing a neutral third party to manage and disperse the assets appellants seek to control. The district court has lived with this case for a long time. We commend the trial court for its management of these complex proceedings and its commitment to ensuring that the victims of appellants' misconduct receive at the end of the day some measure of recompense and justice. The judgment is hereby affirmed.

*AFFIRMED*