**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2215

FEDERAL TRADE COMMISSION,

Plaintiff – Appellee,

and

MARC-PHILIP FERZAN, of Ankura Consulting Group, LLC,

Receiver – Appellee,

v.

ANDRIS PUKKE, a/k/a Marc Romeo, a/k/a Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); PETER BAKER, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); JOHN USHER, individually and as an officer or owner of Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve) and Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve); BUY BELIZE, LLC, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California limited liability company; BUY INTERNATIONAL, INC., d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California Corporation; ECO FUTURES DEVELOPMENT, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a company organized under the laws of Belize; ECO-FUTURES BELIZE LIMITED, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a California Corporation; SITTEE RIVER WILDLIFE RESERVE, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, an entity organized under the laws of Belize; GLOBAL PROPERTY ALLIANCE INC., a California corporation, also doing business as Sanctuary Bay, Sanctuary Belize, the Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International;

FOUNDATION DEVELOPMENT MANAGEMENT, INC., a California Corporation; POWER HAUS MARKETING, a California Corporation; PRODIGY MANAGEMENT GROUP LLC, a Wyoming limited liability company; EXOTIC INVESTOR, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; NEWPORT LAND GROUP, LLC, a/k/a The Reserve, a Wyoming limited liability company; SOUTHERN BELIZE REALTY, LLC, a limited liability company organized under the laws of Belize; BELIZE REAL ESTATE AFFILIATES, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; SANCTUARY BELIZE PROPERTY OWNERS' ASSOCIATION, d/b/a The Reserve Property Owners' Association, a Texas non-profit corporation; THE ESTATE OF JOHN PUKKE, d/b/a The Estate of Janis Pukke, a/k/a The Estate of Andris Pukke,

　　　　Defendants – Appellants,

and

CROSS-FREDERICK ASSOCIATES, LLC; FOLEY & LARDNER LLP,

　　　　Respondents,

UNITED STATES OF AMERICA,

　　　　Creditor,

JERRY BROWN; STEPHANIE BROWN; DELANEY CARLSON; THERESA EDELEN; BILL EWING; CHERYL EWING; CRAIG HIBBERT; TRISHA HIBBERT; LISA MULVANIA; RICHARD MULVANIA; CINDY REEVES; DAVID REEVES; PENNY SCRUTCHIN; THOM SCRUTCHIN; CLIFF SMITH; TERRI SMITH; PHILLIP WATFORD; ANGELA WATFORD; THE HAMPSHIRE GENERATIONAL FUND LLC; DAVID PORTMAN; HARVEY SCHULTZ; STEVEN M. SCHULTZ; JONATHAN B. SCHULTZ; JOHN A. SARACENO,

　　　　Intervenors,

CHAPTER 11 TRUSTEE,

　　　　Trustee.

2

---

**No. 21-1454**

---

FEDERAL TRADE COMMISSION,

>          Plaintiff – Appellee,

and

MARC-PHILIP FERZAN, of Ankura Consulting Group, LLC,

>          Receiver – Appellee,

v.

PETER BAKER, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize),

>          Defendant – Appellant,

and

ANDRIS PUKKE, a/k/a Marc Romeo, a/k/a Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); LUKE CHADWICK, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize; ECOLOGICAL FOX, LLC, a Maryland limited liability company; GLOBAL PROPERTY ALLIANCE, INC., a California corporation, also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International; SITTEE RIVER WILDLIFE RESERVE, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, an entity organized under the laws of Belize; BUY BELIZE, LLC, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California limited liability company; BUY INTERNATIONAL, INC., d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California corporation;

FOUNDATION DEVELOPMENT MANAGEMENT INC., a California corporation; ECO FUTURES DEVELOPMENT, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a company organized under the laws of Belize; POWER HAUS MARKETING, a California corporation; BRANDI GREENFIELD, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); BG MARKETING, LLC, an Oklahoma limited liability company; PRODIGY MANAGEMENT GROUP, LLC, a Wyoming limited liability company; JOHN USHER, individually and as an officer or owner of Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve) and Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve); ROD KAZAZI, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); FOUNDATION PARTNERS, f/k/a Red Crane Advisors, Inc., a California corporation; FRANK COSTANZO, a/k/a Frank Green, a/k/a Frank Peerless Green, a/k/a Frank Connelly, a/k/a Frank Connelly-Costanzo, individually and as officer or owner of Ecological Fox, LLC, Buy International, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), and Foundation Development Management, Inc.); BELIZE REAL ESTATE AFFILIATES, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; EXOTIC INVESTOR, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; SANCTUARY BELIZE PROPERTY OWNERS' ASSOCIATION, d/b/a The Reserve Property Owners' Association, a Texas non-profit corporation; ANGELA CHITTENDEN; BEACH BUNNY HOLDINGS, LLC, a California limited liability company; THE ESTATE OF JOHN PUKKE, a/k/a The Estate of Janis Pukke, a/k/a The Estate of John Andris Pukke; JOHN VIPULIS; DEBORAH CONNELLY; NEWPORT LAND GROUP, LLC, a/k/a Laguna Palms, a/k/a Sanctuary Belize, a/k/a Bamboo Springs, a/k/a The Reserve, a Wyoming limited liability company; MICHAEL SANTOS, a/k/a Sanctuary Bay, a/k/a Sanctuary Belize, a/k/a The Reserve, a/k/a Kanantik, a/k/a Laguna Palms, a/k/a Bamboo Springs, a/k/a Eco Futures, a/k/a Eco Futures Development, a/k/a Eco Future Belize, a/k/a Sittee River Wildlife Reserve, a/k/a Buy Belize, a/k/a Buy International, a/k/a Buy Belize, LLC, (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), a/k/a Buy International, Inc., (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Lagunal Palms, and Bamboo Springs), Individually and as an officer or owner of Global Property Alliance, Inc; AMERIDEBT, INCORPORATED; DEBTWORKS, INCORPORATED; PAMELA PUKKE, a/k/a Pamela Shuster; ATLANTIC INTERNATIONAL BANK, LTD, a

4

company organized under the laws of Belize; ECO-FUTURES BELIZE LIMITED, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a California Corporation; SOUTHERN BELIZE REALTY, LLC, a limited liability company organized under the laws of Belize,

Defendants,

CROSS-FREDERICK ASSOCIATES, LLC; FOLEY & LARDNER LLP,

Respondents,

UNITED STATES OF AMERICA,

Creditor,

JERRY BROWN; STEPHANIE BROWN; DELANEY CARLSON; THERESA EDELEN; BILL EWING; CHERYL EWING; CRAIG HIBBERT; TRISHA HIBBERT; LISA MULVANIA; RICHARD MULVANIA; CINDY REEVES; DAVID REEVES; PENNY SCRUTCHIN; THOM SCRUTCHIN; CLIFF SMITH; TERRI SMITH; PHILLIP WATFORD; ANGELA WATFORD; THE HAMPSHIRE GENERATIONAL FUND LLC; DAVID PORTMAN; HARVEY SCHULTZ; STEVEN M. SCHULTZ; JONATHAN B. SCHULTZ; JOHN A. SARACENO,

Intervenors,

CHAPTER 11 TRUSTEE,

Trustee.

---

**No. 21-1520**

---

FEDERAL TRADE COMMISSION,

Plaintiff – Appellee,

and

MARC-PHILIP FERZAN, of Ankura Consulting Group, LLC,

Receiver – Appellee,

5

v.

JOHN USHER, individually and as an officer or owner of Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve) and Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve),

　　　　　Defendant – Appellant,

and

ANDRIS PUKKE, a/k/a Marc Romeo, a/k/a Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); PETER BAKER, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); LUKE CHADWICK, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize; ECOLOGICAL FOX, LLC, a Maryland limited liability company; GLOBAL PROPERTY ALLIANCE, INC., a California corporation, also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International; SITTEE RIVER WILDLIFE RESERVE, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, an entity organized under the laws of Belize; BUY BELIZE, LLC, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California limited liability company; BUY INTERNATIONAL, INC., d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California corporation; FOUNDATION DEVELOPMENT MANAGEMENT INC., a California corporation; ECO FUTURES DEVELOPMENT, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a company organized under the laws of Belize; POWER HAUS MARKETING, a California corporation; BRANDI GREENFIELD, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); BG MARKETING, LLC, an Oklahoma limited liability company; PRODIGY MANAGEMENT GROUP, LLC, a Wyoming limited liability company; ROD KAZAZI, individually and as an officer or owner of Global Property

Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); FOUNDATION PARTNERS, f/k/a Red Crane Advisors, Inc., a California corporation; FRANK COSTANZO, a/k/a Frank Green, a/k/a Frank Peerless Green, a/k/a Frank Connelly, a/k/a Frank Connelly-Costanzo, individually and as officer or owner of Ecological Fox, LLC, Buy International, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), and Foundation Development Management, Inc.); BELIZE REAL ESTATE AFFILIATES, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; EXOTIC INVESTOR, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; SANCTUARY BELIZE PROPERTY OWNERS' ASSOCIATION, d/b/a The Reserve Property Owners' Association, a Texas non-profit corporation; ANGELA CHITTENDEN; BEACH BUNNY HOLDINGS, LLC, a California limited liability company; THE ESTATE OF JOHN PUKKE, a/k/a The Estate of Janis Pukke, a/k/a The Estate of John Andris Pukke; JOHN VIPULIS; DEBORAH CONNELLY; NEWPORT LAND GROUP, LLC, a/k/a Laguna Palms, a/k/a Sanctuary Belize, a/k/a Bamboo Springs, a/k/a The Reserve, a Wyoming limited liability company; MICHAEL SANTOS, a/k/a Sanctuary Bay, a/k/a Sanctuary Belize, a/k/a The Reserve, a/k/a Kanantik, a/k/a Laguna Palms, a/k/a Bamboo Springs, a/k/a Eco Futures, a/k/a Eco Futures Development, a/k/a Eco Future Belize, a/k/a Sittee River Wildlife Reserve, a/k/a Buy Belize, a/k/a Buy International, a/k/a Buy Belize, LLC, (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), a/k/a Buy International, Inc., (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Lagunal Palms, and Bamboo Springs), Individually and as an officer or owner of Global Property Alliance, Inc; AMERIDEBT, INCORPORATED; DEBTWORKS, INCORPORATED; PAMELA PUKKE, a/k/a Pamela Shuster; ATLANTIC INTERNATIONAL BANK, LTD, a company organized under the laws of Belize; ECO-FUTURES BELIZE LIMITED, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a California Corporation; SOUTHERN BELIZE REALTY, LLC, a limited liability company organized under the laws of Belize,

Defendants,

CROSS-FREDERICK ASSOCIATES, LLC; FOLEY & LARDNER LLP,

Respondents,

UNITED STATES OF AMERICA,

7

Creditor,

JERRY BROWN; STEPHANIE BROWN; DELANEY CARLSON; THERESA EDELEN; BILL EWING; CHERYL EWING; CRAIG HIBBERT; TRISHA HIBBERT; LISA MULVANIA; RICHARD MULVANIA; CINDY REEVES; DAVID REEVES; PENNY SCRUTCHIN; THOM SCRUTCHIN; CLIFF SMITH; TERRI SMITH; PHILLIP WATFORD; ANGELA WATFORD; THE HAMPSHIRE GENERATIONAL FUND LLC; DAVID PORTMAN; HARVEY SCHULTZ; STEVEN M. SCHULTZ; JONATHAN B. SCHULTZ; JOHN A. SARACENO,

Intervenors,

CHAPTER 11 TRUSTEE,

Trustee.

---

**No. 21-1521**

---

FEDERAL TRADE COMMISSION,

Plaintiff – Appellee,

and

MARC-PHILIP FERZAN, of Ankura Consulting Group, LLC,

Receiver – Appellee,

v.

ANDRIS PUKKE, a/k/a Marc Romeo, a/k/a Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize),

Defendant – Appellant,

and

8

PETER BAKER, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); LUKE CHADWICK, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize; ECOLOGICAL FOX, LLC, a Maryland limited liability company; GLOBAL PROPERTY ALLIANCE, INC., a California corporation, also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International; SITTEE RIVER WILDLIFE RESERVE, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, an entity organized under the laws of Belize; BUY BELIZE, LLC, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California limited liability company; BUY INTERNATIONAL, INC., d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California corporation; FOUNDATION DEVELOPMENT MANAGEMENT INC., a California corporation; ECO FUTURES DEVELOPMENT, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a company organized under the laws of Belize; POWER HAUS MARKETING, a California corporation; BRANDI GREENFIELD, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); BG MARKETING, LLC, an Oklahoma limited liability company; PRODIGY MANAGEMENT GROUP, LLC, a Wyoming limited liability company; JOHN USHER, individually and as an officer or owner of Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve) and Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve); ROD KAZAZI, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); FOUNDATION PARTNERS, f/k/a Red Crane Advisors, Inc., a California corporation; FRANK COSTANZO, a/k/a Frank Green, a/k/a Frank Peerless Green, a/k/a Frank Connelly, a/k/a Frank Connelly-Costanzo, individually and as officer or owner of Ecological Fox, LLC, Buy International, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), and Foundation Development Management, Inc.); BELIZE REAL ESTATE AFFILIATES, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; EXOTIC INVESTOR, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the

9

laws of St. Kitts and Nevis; SANCTUARY BELIZE PROPERTY OWNERS ASSOCIATION, d/b/a The Reserve Property Owners' Association, a Texas non-profit corporation; ANGELA CHITTENDEN; BEACH BUNNY HOLDINGS, LLC, a California limited liability company; THE ESTATE OF JOHN PUKKE, a/k/a The Estate of Janis Pukke, a/k/a The Estate of John Andris Pukke; JOHN VIPULIS; DEBORAH CONNELLY; NEWPORT LAND GROUP, LLC, a/k/a Laguna Palms, a/k/a Sanctuary Belize, a/k/a Bamboo Springs, a/k/a The Reserve, a Wyoming limited liability company; MICHAEL SANTOS, a/k/a Sanctuary Bay, a/k/a Sanctuary Belize, a/k/a The Reserve, a/k/a Kanantik, a/k/a Laguna Palms, a/k/a Bamboo Springs, a/k/a Eco Futures, a/k/a Eco Futures Development, a/k/a Eco Future Belize, a/k/a Sittee River Wildlife Reserve, a/k/a Buy Belize, a/k/a Buy International, a/k/a Buy Belize, LLC, (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), a/k/a Buy International, Inc., (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Lagunal Palms, and Bamboo Springs), Individually and as an officer or owner of Global Property Alliance, Inc; AMERIDEBT, INCORPORATED; DEBTWORKS, INCORPORATED; PAMELA PUKKE, a/k/a Pamela Shuster; ATLANTIC INTERNATIONAL BANK, LTD, a company organized under the laws of Belize; ECO-FUTURES BELIZE LIMITED, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a California Corporation; SOUTHERN BELIZE REALTY, LLC, a limited liability company organized under the laws of Belize,

       Defendants,

CROSS-FREDERICK ASSOCIATES, LLC; FOLEY & LARDNER LLP,

       Respondents,

UNITED STATES OF AMERICA,

       Creditor,

JERRY BROWN; STEPHANIE BROWN; DELANEY CARLSON; THERESA EDELEN; BILL EWING; CHERYL EWING; CRAIG HIBBERT; TRISHA HIBBERT; LISA MULVANIA; RICHARD MULVANIA; CINDY REEVES; DAVID REEVES; PENNY SCRUTCHIN; THOM SCRUTCHIN; CLIFF SMITH; TERRI SMITH; PHILLIP WATFORD; ANGELA WATFORD; THE HAMPSHIRE GENERATIONAL FUND LLC; DAVID PORTMAN; HARVEY SCHULTZ; STEVEN M. SCHULTZ; JONATHAN B. SCHULTZ; JOHN A. SARACENO,

       Intervenors,

10

CHAPTER 11 TRUSTEE,

      Trustee.

---

**No. 21-1591**

---

FEDERAL TRADE COMMISSION,

      Plaintiff – Appellee,

and

MARC-PHILIP FERZAN, of Ankura Consulting Group, LLC,

      Receiver – Appellee,

v.

GLOBAL PROPERTY ALLIANCE, INC., a California corporation, also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International; SITTEE RIVER WILDLIFE RESERVE, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, an entity organized under the laws of Belize; BUY BELIZE, LLC, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California limited liability company; BUY INTERNATIONAL, INC., d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California corporation; FOUNDATION DEVELOPMENT MANAGEMENT INC., a California corporation; ECO FUTURES DEVELOPMENT, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a company organized under the laws of Belize; ECO-FUTURES BELIZE LIMITED, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a California Corporation; POWER HAUS MARKETING, a California corporation,

      Defendants – Appellants,

and

11

ANDRIS PUKKE, a/k/a Marc Romeo, a/k/a Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); PETER BAKER, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); LUKE CHADWICK, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize; ECOLOGICAL FOX, LLC, a Maryland limited liability company; BRANDI GREENFIELD, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); BG MARKETING, LLC, an Oklahoma limited liability company; PRODIGY MANAGEMENT GROUP, LLC, a Wyoming limited liability company; JOHN USHER, individually and as an officer or owner of Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve) and Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve); ROD KAZAZI, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); FOUNDATION PARTNERS, f/k/a Red Crane Advisors, Inc., a California corporation; FRANK COSTANZO, a/k/a Frank Green, a/k/a Frank Peerless Green, a/k/a Frank Connelly, a/k/a Frank Connelly-Costanzo, individually and as officer or owner of Ecological Fox, LLC, Buy International, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), and Foundation Development Management, Inc.); BELIZE REAL ESTATE AFFILIATES, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; EXOTIC INVESTOR, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; SANCTUARY BELIZE PROPERTY OWNERS' ASSOCIATION, d/b/a The Reserve Property Owners' Association, a Texas non-profit corporation; ANGELA CHITTENDEN; BEACH BUNNY HOLDINGS, LLC, a California limited liability company; THE ESTATE OF JOHN PUKKE, a/k/a The Estate of Janis Pukke, a/k/a The Estate of John Andris Pukke; JOHN VIPULIS; DEBORAH CONNELLY; NEWPORT LAND GROUP, LLC, a/k/a Laguna Palms, a/k/a Sanctuary Belize, a/k/a Bamboo Springs, a/k/a The Reserve, a Wyoming limited liability company; MICHAEL SANTOS, a/k/a Sanctuary Bay, a/k/a Sanctuary Belize, a/k/a The Reserve, a/k/a Kanantik, a/k/a Laguna Palms, a/k/a

12

Bamboo Springs, a/k/a Eco Futures, a/k/a Eco Futures Development, a/k/a Eco Future Belize, a/k/a Sittee River Wildlife Reserve, a/k/a Buy Belize, a/k/a Buy International, a/k/a Buy Belize, LLC, (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), a/k/a Buy International, Inc., (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Lagunal Palms, and Bamboo Springs), Individually and as an officer or owner of Global Property Alliance, Inc; AMERIDEBT, INCORPORATED; DEBTWORKS, INCORPORATED; PAMELA PUKKE, a/k/a Pamela Shuster; ATLANTIC INTERNATIONAL BANK, LTD, a company organized under the laws of Belize; SOUTHERN BELIZE REALTY, LLC, a limited liability company organized under the laws of Belize,

       Defendants,

CROSS-FREDERICK ASSOCIATES, LLC; FOLEY & LARDNER LLP,

       Respondents,

UNITED STATES OF AMERICA,

       Creditor,

JERRY BROWN; STEPHANIE BROWN; DELANEY CARLSON; THERESA EDELEN; BILL EWING; CHERYL EWING; CRAIG HIBBERT; TRISHA HIBBERT; LISA MULVANIA; RICHARD MULVANIA; CINDY REEVES; DAVID REEVES; PENNY SCRUTCHIN; THOM SCRUTCHIN; CLIFF SMITH; TERRI SMITH; PHILLIP WATFORD; ANGELA WATFORD; THE HAMPSHIRE GENERATIONAL FUND LLC; DAVID PORTMAN; HARVEY SCHULTZ; STEVEN M. SCHULTZ; JONATHAN B. SCHULTZ; JOHN A. SARACENO,

       Intervenors,

CHAPTER 11 TRUSTEE,

       Trustee.

---

**No. 21-1592**

---

FEDERAL TRADE COMMISSION,

Plaintiff – Appellee,

and

MARC-PHILIP FERZAN, of Ankura Consulting Group, LLC,

Receiver – Appellee,

v.

THE ESTATE OF JOHN PUKKE, a/k/a The Estate of Janis Pukke, a/k/a The Estate of John Andris Pukke,

Defendant – Appellant,

and

ANDRIS PUKKE, a/k/a Marc Romeo, a/k/a Andy Storm, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); PETER BAKER, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); LUKE CHADWICK, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize; ECOLOGICAL FOX, LLC, a Maryland limited liability company; GLOBAL PROPERTY ALLIANCE, INC., a California corporation, also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize, Sittee River Wildlife Reserve, Buy Belize, Buy International; SITTEE RIVER WILDLIFE RESERVE, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, an entity organized under the laws of Belize; BUY BELIZE, LLC, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California limited liability company; BUY INTERNATIONAL, INC., d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, d/b/a Kanantik, d/b/a Laguna Palms, d/b/a Bamboo Springs, a California corporation; FOUNDATION DEVELOPMENT MANAGEMENT INC., a California corporation; ECO FUTURES DEVELOPMENT, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a company organized under the laws of Belize; POWER HAUS MARKETING, a California corporation; BRANDI

14

GREENFIELD, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); BG MARKETING, LLC, an Oklahoma limited liability company; PRODIGY MANAGEMENT GROUP, LLC, a Wyoming limited liability company; JOHN USHER, individually and as an officer or owner of Sittee River Wildlife Reserve (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve) and Eco-Futures Belize Limited (also doing business as Sanctuary Bay, Sanctuary Belize, and The Reserve); ROD KAZAZI, individually and as an officer or owner of Global Property Alliance, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, Bamboo Springs, Eco Futures, Eco Futures Development, Eco Futures Belize); FOUNDATION PARTNERS, f/k/a Red Crane Advisors, Inc., a California corporation; FRANK COSTANZO, a/k/a Frank Green, a/k/a Frank Peerless Green, a/k/a Frank Connelly, a/k/a Frank Connelly-Costanzo, individually and as officer or owner of Ecological Fox, LLC, Buy International, Inc. (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), and Foundation Development Management, Inc.); BELIZE REAL ESTATE AFFILIATES, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; EXOTIC INVESTOR, LLC, d/b/a Coldwell Banker Belize, d/b/a Coldwell Banker Southern Belize, a limited liability company organized under the laws of St. Kitts and Nevis; SANCTUARY BELIZE PROPERTY OWNERS' ASSOCIATION, d/b/a The Reserve Property Owners' Association, a Texas non-profit corporation; ANGELA CHITTENDEN; BEACH BUNNY HOLDINGS, LLC, a California limited liability company; JOHN VIPULIS; DEBORAH CONNELLY; NEWPORT LAND GROUP, LLC, a/k/a Laguna Palms, a/k/a Sanctuary Belize, a/k/a Bamboo Springs, a/k/a The Reserve, a Wyoming limited liability company; MICHAEL SANTOS, a/k/a Sanctuary Bay, a/k/a Sanctuary Belize, a/k/a The Reserve, a/k/a Kanantik, a/k/a Laguna Palms, a/k/a Bamboo Springs, a/k/a Eco Futures, a/k/a Eco Futures Development, a/k/a Eco Future Belize, a/k/a Sittee River Wildlife Reserve, a/k/a Buy Belize, a/k/a Buy International, a/k/a Buy Belize, LLC, (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Laguna Palms, and Bamboo Springs), a/k/a Buy International, Inc., (also doing business as Sanctuary Bay, Sanctuary Belize, The Reserve, Kanantik, Lagunal Palms, and Bamboo Springs), Individually and as an officer or owner of Global Property Alliance, Inc; AMERIDEBT, INCORPORATED; DEBTWORKS, INCORPORATED; PAMELA PUKKE, a/k/a Pamela Shuster; ATLANTIC INTERNATIONAL BANK, LTD, a company organized under the laws of Belize; ECO-FUTURES BELIZE LIMITED, d/b/a Sanctuary Bay, d/b/a Sanctuary Belize, d/b/a The Reserve, a California Corporation; SOUTHERN BELIZE REALTY, LLC, a limited liability company organized under the laws of Belize,

15

Defendants,

CROSS-FREDERICK ASSOCIATES, LLC; FOLEY & LARDNER LLP,

Respondents,

UNITED STATES OF AMERICA,

Creditor,

JERRY BROWN; STEPHANIE BROWN; DELANEY CARLSON; THERESA EDELEN; BILL EWING; CHERYL EWING; CRAIG HIBBERT; TRISHA HIBBERT; LISA MULVANIA; RICHARD MULVANIA; CINDY REEVES; DAVID REEVES; PENNY SCRUTCHIN; THOM SCRUTCHIN; CLIFF SMITH; TERRI SMITH; PHILLIP WATFORD; ANGELA WATFORD; THE HAMPSHIRE GENERATIONAL FUND LLC; DAVID PORTMAN; HARVEY SCHULTZ; STEVEN M. SCHULTZ; JONATHAN B. SCHULTZ; JOHN A. SARACENO,

Intervenors,

CHAPTER 11 TRUSTEE,

Trustee.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore. Peter J. Messitte, Senior District Judge. (1:18-cv-03309-PJM)

---

Argued: September 13, 2022                    Decided: November 1, 2022

---

Before WILKINSON, Circuit Judge, and MOTZ and KEENAN, Senior Circuit Judges.

---

Affirmed in part and vacated and remanded in part by published opinion. Judge Wilkinson wrote the majority opinion, in which Senior Judge Motz and Senior Judge Keenan joined.

---

**ARGUED:** Neil Harris Koslowe, POTOMAC LAW GROUP PLLC, Washington, D.C., for Appellants. Theodore (Jack) Metzler, FEDERAL TRADE COMMISSION, Washington, D.C.; Gary Owen Caris, BARNES & THORNBURG, LLP, Los Angeles,

16

California, for Appellees. **ON BRIEF:** John B. Williams, WILLIAMS LOPATTO PLLC, Washington, D.C., for Appellants. James Reilly Dolan, Acting General Counsel, Joel Marcus, Deputy General Counsel, FEDERAL TRADE COMMISSION, Washington, D.C., for Appellee Federal Trade Commission. Janet Dean Gertz, BARNES & THORNBURG, LLP, Los Angeles, California, for Appellee Marc-Philip Ferzan of Ankura Consulting Group, LLC, Receiver.

WILKINSON, Circuit Judge:

Andris Pukke and other appellants sought to develop thousands of acres of land in Belize, which they marketed as a luxury resort called "Sanctuary Belize." In their sales-pitch to U.S. consumers, many promises were made but not kept. In 2018, the FTC shut this down, calling Sanctuary Belize a "scam," and alleging violations of the Federal Trade Commission Act and the Telemarketing Sales Rule for making misrepresentations to consumers. The FTC also brought contempt charges against Pukke stemming from past judgments against him. After an extensive bench trial, the district court found ample evidence of violative and contumacious conduct, ultimately ruling in the FTC's favor. Pukke and others now appeal, raising a host of issues. None of their arguments have legal merit, nor can they overcome the evidence against them. We thus affirm in large part, the one exception being vacating the equitable monetary judgments in accordance with the Supreme Court's decision in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021) (holding that the FTC has no authority to seek monetary relief under Section 13(b) of the FTC Act).

I.

A.

In 2003, Andris Pukke and Peter Baker began developing land in the Central American country of Belize. *In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 389 (D. Md. 2020). With the help of John Usher, a Belize native, they began selling lots in 2005 with the intent to convert this tropical area into a luxury resort for American vacationers, calling the project, among other names, Sanctuary Belize. *Id.* at 390. The individuals and

18

corporate entities that developed and sold these real estate lots were collectively referred to as Sanctuary Belize Enterprise (SBE). *Id.* at 385 n.1.

Pukke was effectively the CEO of the project and led the sales and marketing aspects of SBE. In 2009, Pukke began to "pursue[] an aggressive advertising campaign throughout the United States, using various media, including enthusiastic promotions on" television and websites. *Id.* at 390. Potential consumers were directed to a website where they could submit contact information. They would then be called by telemarketers, who had been coached to "create a sense of urgency and a fear of loss on the part of prospective purchasers, techniques somewhat reminiscent of those used by Jordan Belfort, aka the 'Wolf of Wall Street.'" *Id.* at 390–91.

Many consumers elected to tour Sanctuary Belize in person, but they had to purchase their own airfare and an all-inclusive five-day tour for $799 per person or $999 per couple. Some consumers purchased a right of first refusal on particular lots for between $2,000 and $10,000. Others agreed to purchase lots sight unseen. *Id.* at 391–92. Salespersons encouraged consumers to purchase a second lot on the representation that they could "easily sell the first lot and use the proceeds of that sale to build a house on the second lot." *Id.* at 392. All told, over 1,000 lots have been sold, some more than once. *Id.* at 390.

Around 2011, as Sanctuary Belize continued to promote its lots, Pukke was involved in a criminal proceeding in which he pled guilty to obstruction of justice based on concealment and false statements to the FTC. The court sentenced Pukke to 18 months in prison. *Id.* at 395. Despite the injunctions and supervised release conditions imposed on

19

him, Pukke continued to promote SBE from the time of his release through 2018, acting as the "mastermind" and "Chief Executive Office[r] in control of the entire Sanctuary Belize operation." *Id.* at 396, 467. Nonetheless, SBE represented to consumers that Pukke had no meaningful involvement in the development, disguising Pukke's identity behind aliases such as "Marc Romeo" and "Andy Storm." *Id.* at 396.

SBE's development came to an end in 2018 when the Federal Trade Commission intervened. The FTC filed a complaint under Section 13(b) of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 53(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108, against Andris Pukke, Peter Baker, John Usher, and other entities involved in SBE. The FTC alleged that SBE made false and misleading representations in the sale of lots in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule (TSR), 16 C.F.R. § 310.3.

The FTC also filed three motions for civil contempt: one against Pukke, Baker, and Usher for their deceptive telemarketing practices in violation of an earlier final order, J.A. 389, another against Pukke, Baker, and Usher for failing to turn over the SBE land, J.A. 395, and one against Pukke for violating a past stipulated order for conditional release, J.A. 421. The district court consolidated the above matters into the current case.

## B.

The district court, with Judge Peter J. Messitte presiding, held a multiweek evidentiary hearing on the FTC's request for a preliminary injunction, which it granted. The court then held a nearly three-week bench trial on the FTC's claims under the FTC Act and TSR, and on the FTC's three contempt motions. The court then issued a detailed

20

opinion of over one-hundred pages in which it set forth its comprehensive findings. The court found that SBE had violated the FTC Act and TSR, and it held Pukke and others in contempt.

1.

Regarding SBE's misrepresentation, the court found that Pukke and his team had committed five of the six alleged FTC Act and TSR violations. First, Sanctuary Belize lied to consumers by telling them the development carried "no debt," and that meant when they bought land in Sanctuary Belize, "not a penny goes to paying a loan—it goes right into the progress of the development." *Sanctuary Belize*, 482 F. Supp. 3d at 404–06. Many consumers understood "no debt" to mean Sanctuary Belize was a safe investment. In reality, the development carried debt and was riskier than promised. The court found that the "fundamental glaring fact was and is that Pukke" and his "minions consistently put out this no debt/low risk representation as a marketing strategy . . . even as the development in fact took on . . . not insignificant amounts of debt." *Id.* at 407.

Second, despite promising consumers that "every dollar the developer collected from the sales of lots would go back into the development," SBE used only 14% of sales revenue for development. "Quite shockingly," the court found "incontrovertible evidence that Pukke diverted enormous sums of sales revenue away from the development, i.e., some $18 million or about 12.8% of the total sales revenue, for his own benefit and that of his friends and family." *Id.* at 408–09.

Third, consumers were assured "that the completed development would boast extraordinary amenities comparable to those of a small American city." To the contrary,

21

"most of these luxury amenities either do not exist, do not exist as promised or have never been seriously contemplated to exist at all outside of marketing materials and verbal promises." *Id.* at 411–13.

Fourth, consumers were promised that the development would be completed within two to five years, despite the fact that SBE never had "sufficient funds to finish the development, luxury amenities included, in the time promised." *Id.* at 419. In fact, "Sanctuary Belize could never be completed as promised even assuming revenue for the next five years would be at a historic high." *Id.* At trial, the FTC showed that a substantial number of consumers, many of whom were retired individuals, relied on this promise when deciding whether to purchase. *Id.* at 420–21.

Fifth, while salespersons claimed there was a strong resale market for Sanctuary Belize lots, SBE employees were "actively working to undermine and impede resales" by preventing owners from reselling their lots before the developer sold all the lots. *Id.* at 423–24. The court found that Sanctuary Belize developers "knew that lot owners were having extreme difficulty reselling their lots" and yet, "without any basis for saying so, they made the representation that there was or would be a 'robust' resale market." *Id.* at 424.

Last, the court found that it was an "overarching falsehood that Pukke had no meaningful involvement in Sanctuary Belize." *Id.* at 401. This "crowning misrepresentation," *id.* at 388, misled consumers because "Pukke had been found guilty of two felonies" that involved "deception of trusting consumers," *id.* at 425. SBE knew this would scare away purchasers if Pukke's involvement were discovered.

22

The court found these misrepresentations violated the FTC Act and the Telemarketing Sales Rule. The court entered permanent injunctions against each defendant under Section 13(b) of the FTC Act. For Pukke, the court found a "cognizable danger of recurring violation" due to past "machinations." *Sanctuary Belize*, 482 F. Supp. 3d at 467. Thus, in its amended final order, the court permanently enjoined Pukke from engaging in any real estate ventures, from any involvement in telemarketing, and from making material misrepresentations in connection with the sale of any goods or services. J.A. 1075–77. The court permanently enjoined Baker and Usher from telemarketing and making material misrepresentations as well. *Id*.

Also under Section 13(b), the court entered an equitable monetary judgment of $120.2 million against defendants. J.A. 1077 (equitable monetary judgments, as used by the district court, included remedies such as restitution and disgorgement of ill-gotten gains, *see AMG Cap. Mgmt.*, 141 S. Ct. at 1344). The court found that SBE's material misrepresentations led them to rake in $145 million in consumer payments for lots. After subtracting expenditures for buybacks and Belizean taxes, the court calculated the total harm to consumers at $120.2 million. *Sanctuary Belize*, 482 F. Supp. 3d at 474–75. To effectuate its equitable relief, the court appointed a receiver. J.A. 1082–85.

2.

Regarding the contempt motions, the court found Pukke, Baker, and Usher in contempt of permanent injunctions entered in an earlier case. In 2003, Pukke helped found a company called AmeriDebt, which turned out to be a credit counseling scam. *Sanctuary Belize*, 482 F. Supp. 3d at 393; *see F.T.C. v. Ameridebt, Inc.*, 373 F. Supp. 2d 558, 561 (D.

23

Md. 2005) (detailing that AmeriDebt "operated as a common enterprise to deceive consumers into paying for high-cost debt management plans"). Rather than risk trial for his malfeasance, Pukke agreed to a stipulated final judgment. This judgment required him to pay $172 million in restitution to the FTC. J.A. 1131. All but $35 million was suspended on the condition that Pukke "cooperate fully" with the FTC. J.A. 1131–36. The judgment also permanently enjoined Pukke from making false representations in connection with the telemarketing of any good or service. J.A. 1130–31.

Pukke and Baker, who was also involved with AmeriDebt, were ordered to turn over all assets to a receiver. J.A. 1140–45. Rather than cooperate, however, they conspired to hide their assets. As a result, in 2007, Pukke and Baker were held in contempt and incarcerated in order to coerce compliance with the court's *AmeriDebt* orders. *Sanctuary Belize*, 482 F. Supp. 3d at 394. After roughly six weeks in custody, Pukke and Baker were released on the condition that they turn over their assets. *Id.*; J.A. 1160–65. Around this time, John Vipulis offered to pay the receiver $4.5 million which would go toward the $35 million Pukke owed the FTC. As such, the payment was considered a loan to Pukke and the court stipulated that Pukke must fully repay the FTC before he repaid Vipulis. J.A. 1162–63. As all this transpired, Pukke and Baker were able to maintain their land holdings in Belize, ostensibly by terminating their rights in the land via a company run by John Usher. *Sanctuary Belize*, 482 F. Supp. 3d at 394.

Because Pukke and Baker were under *AmeriDebt's* permanent injunction prohibiting them from making false representations in telemarketing, when the FTC brought its case against Sanctuary Belize, it also brought three contempt motions against

24

Pukke and his associates. First, the FTC motioned that the court hold Pukke and others in contempt of the *AmeriDebt* judgment when they committed telemarketing violations. Second, the FTC asserted that Pukke and others should be held in contempt for not turning over their holdings in the Sanctuary Belize land. And third, the FTC asked the court to hold Pukke in contempt for repaying the Vipulis loan before fully satisfying his debt to the FTC.

The court agreed with the FTC on the first and third motions. *Sanctuary Belize*, 482 F. Supp. 3d at 484–85; J.A. 1050–53. The court found that Pukke violated the *AmeriDebt* permanent injunction that prohibited Pukke and his accomplices from "making, or causing or assisting others to make, expressly or by implication, any false or misleading representation." J.A. 1130. By engaging in fraudulent telemarketing, Pukke violated the *AmeriDebt* order. And because this order extended to Pukke's "affiliates," Baker and Usher were held in contempt as well. *Sanctuary Belize*, 482 F. Supp. 3d at 476.

The court ordered that Pukke, Baker, and Usher pay the FTC $120.2 million, "which represent[ed] the total consumer loss their contumacious conduct caused," and it "represent[ed] consumer loss caused by their violation of the Telemarketing Order [from *AmeriDebt*], which prohibited any false or misleading representation in connection with 'telemarketing.'" J.A. 1052. In its memorandum opinion from January 12, 2021, the district court explained that "the harm" from the "contumacious conduct is indeed the same as the harm caused by the FTC Act violations, in the present case $120.2 million." J.A. 1017–18.

The court also held Pukke in contempt for repaying the Vipulis loan before he paid the FTC. The court found that Pukke did not fully cooperate and now owed the full $172 million of the *AmeriDebt* judgment to the FTC rather than the suspended amount of $35

25

million. J.A. 1051–52; *Sanctuary Belize Litig.*, 482 F. Supp. 3d at 481–84. The court ordered that "Pukke must account for the difference between the $4.26 million that Pukke" diverted from Sanctuary Belize to repay Vipulis and the "$4.112 million Vipulis paid the FTC, approximately $148,000—the exact number to be determined after an accounting." *Id.* at 484.

3.

Last, the district court entered default judgments against John Usher and several corporations. J.A. 1022–49. Despite being properly served, these parties never made an appearance in the proceedings. *See Sanctuary Belize*, 482 F. Supp. 3d at 459–66. The default judgments contained permanent injunctions prohibiting their involvement in real estate ventures, telemarketing, and misrepresentations in future sales. J.A. 1028–29. The court also entered an equitable monetary judgment against the defaulted parties to the tune of $120.2 million. J.A. 1030.

Pukke, Baker, Usher, and some of the defaulted corporations timely appealed. J.A. 1105–12. They now level multiple challenges against the following: (1) the $120.2 million monetary judgment and permanent injunctions entered for their FTC Act and TSR violations; (2) the telemarketing contempt judgment of $120.2 million; (3) Pukke's second contempt judgment arising from the Vipulis payment; and (4) the default judgments entered against Usher and corporations.

II.

Pukke and other appellants advance a mixed bag of factual and legal challenges to the contempt orders, equitable monetary judgments, permanent injunctions, and default judgments. We consider each in turn.

A.

We address the contempt orders first. We review a district court's civil contempt order for abuse of discretion. *United v. Ali*, 874 F.3d 825, 829 (4th Cir. 2017). Additionally, when it comes to contempt orders, "our review is even more deferential because district courts are in the best position to interpret their own orders." *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004).

To establish civil contempt, the FTC needed to prove by clear and convincing evidence "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

The district court found that these four elements were met in two of the three contempt motions brought by the FTC. The court held Pukke in contempt for not cooperating with the FTC and repaying the Vipulis loan before he repaid the FTC. Additionally, the court held Pukke, Baker, and Usher in contempt for making misrepresentations in telemarketing, a direct violation of the *AmeriDebt* permanent

27

injunction. Both of these findings are supported by an abundance of evidence and show no hint of an abuse of discretion.

1.

The district court did not abuse its discretion in finding that all four elements were proven regarding the Vipulis contempt motion and Pukke's noncooperation with the FTC. Pukke knew of the decrees against him because he affirmatively agreed to them twice— once in his stipulated final judgment and again in his conditional release. To avoid trial in the *AmeriDebt* case, Pukke agreed to a judgment against him for $172 million. He was made well-aware that the full amount would be suspended, and he would only pay $35 million *if* he fully cooperated with the FTC. Pukke again affirmatively agreed to cooperate with the FTC in his stipulations for conditional release from confinement. There, he agreed that the payment of $4.5 million he received from John Vipulis was considered a loan and that, to fully cooperate, Pukke must repay the FTC before repaying Vipulis. Pukke thus knew of the conditions the law placed upon him. Additionally, regarding the second prong, these conditions were certainly in the FTC's favor for they ensured that the Commission would receive Pukke's compliance so that it could compensate his victims.

Pukke indisputably violated the terms of the decrees for the record "conclusively establish[es] the fact of Pukke's non-cooperation with the FTC and trigger[s] the $172 million judgment." *Sanctuary Belize*, 482 F. Supp. 3d at 483. The district court explained that "Pukke's non-cooperation with the FTC is emphatically underscored by the fact that, following entry of the Stipulated Final Judgment, he was charged with, and in this Court, pled guilty to . . . obstruction of justice for concealing assets in *AmeriDebt* as well as in a

28

related bankruptcy case." *Id.* Not only did Pukke knowingly repay Vipulis prior to repaying the FTC, but he also knowingly pled guilty to obstruction of justice, thereby violating the conditions from the *AmeriDebt* judgment and his conditional release.

The FTC suffered harm as a result of these actions for it was deprived the cooperation and funds needed to remedy Pukke's past wrongs in *AmeriDebt*. Thus, the district court properly found each prong of the civil contempt standard met. Indeed, with evidence as conclusive as this, the district court came nowhere close to abusing its discretion by holding Pukke in contempt.

Pukke's attempts to dispute this holding all fall short. Pukke asserts the recent Supreme Court case *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021), which held that the FTC has no authority to seek monetary relief under Section 13(b) of the FTC Act, renders the $172 million *AmeriDebt* judgment unlawful. With this argument, Pukke tries to drag us into relitigating the merits of a case made final nearly twenty years ago.

This flies in the face of the well-established rule that "appeal from a postjudgment order does not revive a lost opportunity to appeal the judgment." 15B Wright & Miller, *Federal Practice and Procedure* § 3916 (2d ed. 1992). As such, the merits of the *AmeriDebt* decision are not before us, but enforcement of the *AmeriDebt* judgment is. And there is "no question" that courts "have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018). Since the Founding, it has been

29

understood that courts possess contempt powers to guard against violations of their own orders. *Green v. United States*, 356 U.S. 165, 169–70 (1958) (explaining that under the Judiciary Act of 1789, federal courts were understood to be able to exercise the English common law tradition of holding parties in contempt for disobeying the court); *see also* Judiciary Act of 1789, ch. 20, § 17, 1 Stat. 73, 83 (1789) (granting courts broad contempt power).

The district court was thus acting well within its rights to utilize the contempt power to effectuate its *AmeriDebt* judgments. Without the ability to enforce its own orders, the judicial system becomes all bark and no bite. It is a principle "as ancient as the laws themselves" that "laws without a competent authority to secure their administration from disobedience and contempt would be vain and nugatory." W. Blackstone, 4 Commentaries on the Laws of England 286 (1769). Holding parties in contempt is a power that "cannot be dispensed with in a Court, because [it is] necessary to the exercise of all others." *United States v. Hudson*, 11 U.S. 32, 34 (1812).

A sense of balance is important here. Contempt is an awesome and potentially oppressive power, a sanction not to be lightly imposed. *Cooke v. United States*, 267 U.S. 517, 539 (1925) (emphasizing that the exercise of the contempt power "is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions"). But its importance is evident in a case like this. If parties can defy injunctions with impunity over the span of nearly two decades, they can deploy the very means of their misdeeds to perpetual ends. Here, Pukke has repeatedly harmed and deceived people despite direct injunctions

30

forbidding these very acts. Had Pukke obeyed the injunctions, he never would have swindled Sanctuary Belize consumers out of millions of dollars.

Furthermore, even if by some stretch of the imagination Pukke convinced us to relitigate a closed case, his arguments still falter. He agreed to "waive all rights to seek judicial review or otherwise challenge or contest the validity of [the] Order" when he consented to the *AmeriDebt* final judgment. J.A. 1125. When a defendant willingly enters a stipulated judgment, he is given the benefit of certainty—over the uncertainty of trial—in exchange for not challenging the agreement in the future. Thus, the FTC received the guarantee that the judgment would be settled and final. To upset that arrangement now, nearly twenty years later, would wholly undermine the waiver. Pukke waived his ability to challenge this judgment and we will not reopen that challenge for him.

The district court was correct to hold Pukke in contempt for not cooperating with the FTC as he had explicitly pledged to do. For the foregoing reasons, its holding is hereby affirmed.

2.

The district court likewise did not abuse its discretion in holding Pukke, Baker, and Usher in contempt for their telemarketing misrepresentations in violation of the *AmeriDebt* permanent injunction. Once again, all four elements were met here. Pukke had knowledge of the injunctions when he willingly entered a stipulated judgment, the injunctions were in the FTC's favor, Pukke knowingly flouted these prohibitions and masterminded a telemarketing scam, and this harmed the FTC's ability to compensate the victims of current and past fraud.

31

The district court found ample proof that Pukke misled consumers with multiple misrepresentations. *Sanctuary Belize*, 482 F. Supp. 3d at 401–29. The district court meticulously recounted those violations of the FTC Act and TSR and found that Pukke, Baker, and Usher had engaged in at least six instances of unlawful telemarketing misrepresentations, including hiding Pukke's involvement in SBE from consumers, knowing his unsavory character would warn them away. It is clear that Pukke and his comrades were aware of their contumacious conduct for they went to some lengths to conceal it.

Pukke and Baker—as Usher has since defaulted—insist that the court cannot impose the $120.2 million judgment against them as part of a telemarketing contempt order because the district court failed to make findings as to how it calculated that amount. We disagree with this argument.

Because the contempt motions were consolidated with the Sanctuary Belize case, the district court presided over both, giving it a precise idea of the harm to consumers caused by the violations of the telemarketing injunction. Upon hearing all the evidence presented at the bench trial, and after evaluating how the numerous falsehoods affected consumers, the court concluded that Pukke's telemarketing misrepresentations had led to SBE obtaining $145 million in consumer payments. *Id.* at 474. Then when it came time to rule on the contempt motions, the district court explained that the $120.2 million represented "the total consumer loss their contumacious conduct caused," specifically the loss caused by their "violation of the Telemarketing Order" from *AmeriDebt*. J.A. 1052. The district court reiterated that "the harm" from the "contumacious conduct is *indeed the*

32

*same* as the harm caused by" the FTC Act violations. J.A. 1017–18 (emphasis added). Contrary to the argument that no findings were made to justify the $120.2 million amount, the judge carefully justified his holding. Thus, the district court did not abuse its discretion in holding Pukke, Baker, and Usher in contempt, and for the foregoing reasons we affirm.

B.

Next, we consider the judgments entered for violations of the Telemarketing Sales Rule and Federal Trade Commission Act. We review a judgment from a bench trial under a mixed standard of review—factual findings are examined for clear error and conclusions of law are reviewed de novo. *Sing Fuels Pte Ltd. v. M/V Lila Shanghai*, 39 F.4th 263, 270–71 (4th Cir. 2022). Importantly, "we will 'not disturb the district court's factual findings if they are plausible in light of the record viewed in its entirety.'" *Id.* at 271 (quoting *Heyer v. U.S. Bureau of Prisons*, 984 F.3d 347, 355 (4th Cir. 2021)).

Section 5 of the Federal Trade Commission Act bars "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). A deceptive act or practice has been defined as "[1] a representation, omission, or practice that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 165 (1984). Most of our sister circuits have used this test for FTC Act liability. *See Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 78 (1st Cir. 2020); *F.T.C. v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006); *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630–31 (6th Cir. 2014); *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 635 (7th Cir. 2005); *F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 (10th Cir. 2005) *F.T.C. v. On Point Cap. Partners*

33

*LLC*, 17 F.4th 1066, 1079 (11th Cir. 2021); *Novartis Corp. v. F.T.C.*, 223 F.3d 783, 786 (D.C. Cir. 2000).

Likewise, the Telemarketing Sales Rule prohibits deceptive acts or practices that "misrepresent[], directly or by implication . . . [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii). The TSR also makes it a violation to "provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in" a deceptive act or practice. 16 C.F.R. § 310.3(b). Whereas the FTC Act prohibits unfair methods of competition "in or affecting commerce," 15 U.S.C. § 45(a)(1), the TSR more narrowly applies to "purchases of goods or services," 15 U.S.C. § 6106(4). Both the TSR and the FTC Act bear the same standards for individual liability. 15 U.S.C. § 6102(c); 15 U.S.C. § 57a(d)(3).

Applying the law to these facts, it is clear that Pukke and SBE violated the FTC Act and TSR. The court found that SBE, under the direction of Pukke, made half a dozen material misrepresentations that misled consumers. These misrepresentations included the lie that Sanctuary Belize carried no debt, the lie that every dollar spent was reinvested in the property (when actually Pukke stole roughly $18 million from the project), the false promise that the completed project would have many luxury amenities, the false promise that the project would be completed within two to five years, the lie that SBE boasted a healthy resale market, and the "crowning deception" that Pukke was not involved in SBE. *Sanctuary Belize*, 482 F. Supp. 3d at 401–29.

34

The findings made by the district court show that Pukke's Belizean business venture was dishonest to the core. The district court correctly surmised that this sort of deception lies at the heart of what the FTC is empowered to seek out and stop.

Though he tries unconvincingly to refute these findings, Pukke's main contention is that the court was wrong to grant $120.2 million in equitable monetary relief against him under Section 13(b) of the FTC Act. Section 13 allows the FTC to sue in federal district court when "the Commission has reason to believe (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b). Although the FTC may seek injunctive relief under Section 13, the Supreme Court held in *AMG Capital* that it does not authorize the FTC to seek, or a court to award, "equitable monetary relief such as restitution or disgorgement." *AMG Cap. Mgmt.*, 141 S. Ct. at 1344.

Pukke latches onto this last point, claiming that the judgment in the Sanctuary Belize case must be thrown out under *AMG Capital*. The Supreme Court's holding in *AMG* does indeed render invalid the $120.2 million equitable monetary judgment, at least to the extent that judgment rests on Section 13(b). *See AMG Cap. Mgmt.*, 141 S. Ct. at 1344. Vacating that judgment does not help Pukke, however, because he already has a $120.2 million judgment against him for contempt of the telemarketing injunction, and the FTC has conceded that it is not seeking $240.4 million against Pukke. Oral Argument at 26:20; Appellee's Response Brief at 15 ("[B]ecause of the contempt sanction, *AMG* would not change the bottom line," for "if the Court sustains the contempt sanction, it need not even reach the effect of *AMG* on the overlapping judgments.").

35

Furthermore, the judgment entered under Section 13(b) included permanent injunctions and appointed a receiver. Pukke is wrong to the extent he argues that *AMG* requires us to reverse those injunctions, for *AMG* did not impair courts' ability to enter injunctive relief under Section 13(b). *See AMG Cap. Mgmt.*, 141 S. Ct. at 1349 (explaining that "the Commission may use § 13(b) to obtain injunctive relief" and this "produces a coherent enforcement scheme"). In short, *AMG* does not undercut the injunctive relief entered under Section 13(b), and the $120.2 million order can be upheld under the contempt judgment, so *AMG* does not in fact change the bottom line. We therefore affirm in part and vacate in part the court's FTC Act and TSR rulings.

C.

We turn next to the default judgments. Here, the district court entered default judgments against Usher and several corporate defendants. The defaulted parties filed a Rule 60(b)(5) motion to set aside the default judgments, which the district court denied because of a failure to comply with local rules. We now "review the district court's ruling on a 60(b) motion for abuse of discretion," but we note that "an appeal from denial of Rule 60(b) relief does not bring up the underlying judgment for review." *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (quoting *Browder v. Dir., Dep't of Corrections of Ill.*, 434 U.S. 257, 263 n. 7 (1978)). In addition, the "disposition of motions made under Rules 55(c) and 60(b) is a matter which lies largely within the discretion of the trial judge and his action is not lightly to be disturbed by an appellate court." *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).

Here, Usher was notified multiple times about the ongoing proceedings against him: the FTC mailed him the original complaint and summons, called his counsel, sent him a copy of the FTC's court filing, and sent him the order directing default judgment against him. J.A. 967. Usher's counsel confirmed receipt and told the FTC that Usher was aware of the proceedings. Yet, "Usher never appeared." *Id.*

As for the corporate defendants, they similarly failed to make an appearance. The corporations believed that counsel for Pukke and Baker would also represent the corporations. Pukke and Baker, however, proceeded pro se after they ran out of funds to pay for legal counsel. Once Pukke and Baker were no longer represented by counsel, the corporations could not claim to be represented by them, for it is well-established that corporations must "appear in federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 195 (1993). Despite knowledge of their lack of representation, the corporations failed to make an appearance after they were duly served.

It is undeniable that default judgments are warranted "against defendants who failed to appear or participate in the proceedings." *Chafin v. Chafin*, 568 U.S. 165, 175 (2013). This is a clear-cut case for default judgment, and the court conscientiously laid out the evidence supporting the same. *See Sanctuary Belize*, 482 F. Supp. 3d at 459–66.

Generally, denial of "Rule 60(b) relief 'does not bring up the underlying judgment for review.'" *Banister v. Davis*, 140 S. Ct. 1698, 1710 (2020) (quoting *Browder*, 434 U.S. at 263 n.7). But while the "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," a defaulting defendant "is not held . . . to admit conclusions of law."

37

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Usher and the corporate defendants now assert that the $120.2 million judgment against them must be thrown out under *AMG Capital.* As noted, *AMG* requires vacating the $120.2 million equitable monetary judgment, but the default judgments are upheld because the district court did not abuse its discretion and *AMG* does not affect the injunctive relief granted in each default judgment. *See* J.A. 1028–29.

III.

Alongside the primary issues above, Pukke and his fellow appellants raise a host of other challenges. All are lacking in merit.

A.

Pukke contends that the Telemarketing Sales Rule does not apply to selling real estate in Sanctuary Belize because the TSR only prohibits misrepresentations in the sale of "goods or services." 16 C.F.R. § 310.3. This argument, however, ignores everything that SBE was promising its consumers. It is generally true that the sale of real estate, of itself, does not constitute a good or service. But here Sanctuary Belize's sales pitch inextricably linked the lots to many promised services and amenities when salespersons marketed the real estate as part of a luxury resort. That is, the services and amenities to be provided were fundamental to the telemarketing scheme.

The district court found that SBE had promised a range of basic amenities, such as "paved roads, fresh drinking water, wastewater management, electrical service, a stable canal system, and security." *Sanctuary Belize*, 482 F. Supp. 3d at 411–12. Most

importantly, SBE advertised many luxury amenities, such as a hospital, medical center, "world class" marina, casino, golf course, and an airport, which all certainly count as promises of goods or services intertwined with the sale of real estate. *Id.* at 412. Thus, consumers were purchasing lots in Sanctuary Belize with the expectation that these parcels of real estate would come with various amenities. When the sale of real estate is so closely tied to promises of goods and services, the TSR is properly implicated, and the district court did not err in its analysis.

## B.

Pukke also challenges the district court's decision to appoint a receiver. The court appointed a receiver to effectuate its orders in the Sanctuary Belize case as it would need an entity to manage the assets turned over by defendants. The receiver was charged with "tak[ing] exclusive control, custody, and possession" of all assets held by defendants in connection with Sanctuary Belize, to "[c]onserve, hold, manage, and prevent the loss" of these assets, and then liquidate those assets to periodically disburse money to the FTC and lot purchasers to compensate them for SBE's misrepresentations. J.A. 1082–83.

Pukke argues that *AMG* requires nullification of the district court's appointment of a receiver and everything the receiver has done. *AMG* does nothing of the sort. The appointment of a receiver has long been considered an ancillary power that a court can deploy to effectuate its injunctive relief. *See Home Mortg. Co. v. Ramsey*, 49 F.2d 738, 743 (4th Cir. 1931) (explaining that a federal court can consider appointing a receiver where the receivership is "ancillary to other relief."). As discussed, the Supreme Court has not limited a court's power to order injunctive relief under Section 13(b) of the FTC Act. *See*

39

*AMG Cap. Mgmt.*, 141 S. Ct. at 1349 (the "Commission may use § 13(b) to obtain injunctive relief").

Here, the appointment of the receiver was ancillary to effectuating the permanent injunctions imposed under the Sanctuary Belize judgment. The receiver was the district court's means of ensuring that further FTC Act and TSR violations would not occur and that Pukke would not continue to profit from these deceptions. And though we have stressed that appointing a receiver "calls for the exercise of the greatest care and judgment," *Ramsey*, 49 F.2d at 742, it falls within the sound discretion of the district court to employ such a remedy. *See Hutchinson v. Fid. Inv. Ass'n*, 106 F.2d 431, 436 (4th Cir. 1939). Therefore, we will not lightly upset the district court's decision. To do so here would remove one of the tools in the court's kit used to effectuate its judgments, compensate victims, and stop further transgressions.

## C.

Next Pukke and Baker argue that they were denied due process because the district court refused to release sufficient funds for them to pay for legal counsel. Absent these funds, they claim, they needed to proceed pro se to their detriment. Yet again, Pukke and Baker are betrayed by the record. To allow Pukke and Baker to pay for personal and legal expenses, the district court permitted Pukke and Baker to withdraw $3,000 per month from the assets that were frozen in the preliminary injunction, then twice unfroze $30,000 in assets for them to pay for legal counsel. Appellants admit that "district courts have discretion to regulate payment of attorneys' fees from [frozen] assets," Appellants' Opening Brief at 48, and we conclude that the court did not abuse it here. *See U.S. ex rel.*

40

*Rahman v. Oncology Assocs.*, 198 F.3d 489, 499 (4th Cir. 1999) (holding that a district court is "authorized by its traditional equitable power to issue" an asset freeze).

Given Pukke's past, it was perfectly reasonable for the court to be cautious about dispensing money to someone who had purloined funds from his previous business. Even in the face of this deception and dishonesty, the court was generous enough to twice grant defendants' request for more resources. It is not our job to micromanage this case, and there was no abuse of discretion in the trial court's handling of the funds needed by Pukke and Baker for adequate legal representation.

## D.

Appellants, committed to leaving no stone unturned, also argue that the contempt judgments and the permanent injunctions against them are time-barred by the statute of limitations contained in 28 U.S.C. § 2462, which requires that a "proceeding for the enforcement of any civil fine, penalty, or forfeiture" be "commenced within five years from the date when the claim first accrued." This statute of limitations does not apply for two reasons: first, neither a contempt judgment nor a permanent injunction is a "penalty" as described in Section 2462, and second, even if it were a penalty, the statute of limitations has not run.

Pukke tries to portray the judgments against him as penalties so that they will fall under Section 2462's five-year time bar. A penalty redresses a "wrong to the public" for violation of public laws. *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642 (2017) (quoting *Huntington v. Attrill*, 146 U.S. 657, 668 (1892)). A contempt sanction, on the other hand, redresses a violation not of public laws but of a court order. Likewise, a penalty punishes

41

past acts whereas an injunction prohibits future conduct. *See Sec. & Exch. Comm'n v. Graham*, 823 F.3d 1357, 1361 (11th Cir. 2016). Therefore, Section 2462 covers neither the contempt orders nor the injunctive relief as neither are penalties.

Even if the statute of limitations did apply, it has not run. The district court found that Pukke's contumacious and violative conduct ran from the early 2000s up through 2018 when the FTC brought suit. *See Sanctuary Belize*, 482 F. Supp. 3d at 392 (finding that misrepresentations "occurred right up to the time the FTC filed this lawsuit in October 2018"). Thus, the FTC's suit was within the five-year period, and the judgments are not time-barred.

## E.

We perceive no merit in the remaining assignments of error. We further note that throwing a bunch of claims at the wall to see what sticks is no way to approach an appeal.

Pukke disputes the validity of the district court's orders imposing an asset freeze and writs of *ne exeat*. An asset freeze immobilizes a party's funds by government mandate, and a writ of *ne exeat* restrains a person from leaving the jurisdiction of the court. Freeze, Ne Exeat, Black's Law Dictionary (11th ed. 2019). Here, the district court was well within its rights to impose both. As discussed, imposing an asset freeze is an appropriate use of the court's discretion, especially given the risk of Pukke diverting funds to his personal accounts. *See Sanctuary Belize*, 482 F. Supp. 3d at 408. Further, an asset freeze is appropriate when parties request equitable relief, as the FTC has here. *U.S. ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 501 (4th Cir. 1999). Regarding the writ of *ne exeat*, the district court can exercise its discretion to grant such a writ if "satisfactory proof is

42

made . . . that the defendant designs quickly to depart from the United States." *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 207 (1932). Here, the international scale of Pukke and Baker's business ventures evinced their ability to leave the country, so the court acted within its discretion by issuing the writ.

Pukke also argues that the contempt judgments are barred by the equitable doctrine of laches, which is the "unreasonable, prejudicial delay in commencing suit." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014). Again, the applicability of laches rests in "the sound discretion of the trial court." *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990). Pukke claims that laches should apply because the contempt sanction was entered 15 years after the claimed violation. Laches, however, is not "a mere matter of time[] but principally a question of the inequity of permitting the claim to be enforced." *Galliher v. Cadwell*, 145 U.S. 368, 373 (1892). There is no inequity here. Pukke's violations did not start and end 15 years ago; Pukke's violations have occurred continuously for nearly two decades. *See Sanctuary Belize*, 482 F. Supp. 3d at 392. Moreover, any alleged delay was caused at least in part by Pukke's efforts to conceal his Sanctuary Belize malfeasance through misrepresentations and aliases. Thus, the district court did not abuse its discretion in holding that laches does not apply.

Next, appellants contend that the permanent injunctions entered against them are overly broad. They believe this is grounds for reversal, but this argument can be summarily rejected. The FTC may seek injunctions framed "broadly enough to prevent respondents from engaging in similarly illegal practices in future advertisements." *F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965). Here, the district court found extensive

43

misrepresentations regarding telemarketing and the sale of real estate intertwined with the promotion of goods and services. *See Sanctuary Belize*, 482 F. Supp. 3d at 396–459. Thus, the various permanent injunctions—including the prohibition of SBE individuals and entities from engaging in further misrepresentations—are appropriately tailored to prevent similar scams in the future. Appellants "must remember that those caught violating the [FTC] Act must expect some fencing in." *F.T.C. v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957).

Last, Pukke challenges the district court's denial of the motion to transfer venue from the District of Maryland to the Central District of California. A district court may transfer venue for "the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Section 13(b) of the FTC Act allows "[a]ny suit" to "be brought where [a defendant] resides or transacts business." 15 U.S.C. § 53(a). The court may then add other defendants "without regard to whether venue is otherwise proper in the district in which the suit is brought." *Id.* Here, appellants admit that at least one defendant transacts business in Maryland, Appellants' Opening Brief at 75, so venue was proper under the FTC Act. Once a suitable venue is found, the decision whether to transfer is left to the discretion of the trial court. *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443 (4th Cir. 2015). The district court in Maryland was within its discretion to keep the case because the FTC's allegations in the Sanctuary Belize case rested on the same facts as the telemarketing contempt charges stemming from *AmeriDebt*, which was litigated in Maryland and which no party had asked to transfer. Once the district court consolidated these matters, it would make little sense to

44

transfer the Sanctuary Belize case and have the same parties litigating identical allegations in two different and distant courts.

We appreciate the district court's exemplary work on this complex and long-running litigation. The judgment is affirmed in part and vacated and remanded in part for such further proceedings as are consistent with this decision.

*AFFIRMED IN PART AND VACATED AND REMANDED IN PART*